317 So.2d 664 (1975)
Igor MARGAN
v.
PRECISION MOTORS, INC., et al.
Nos. 6794, 7047.
Court of Appeal of Louisiana, Fourth Circuit.
August 5, 1975.
*665 Fine & Waltzer, Bruce C. Waltzer, New Orleans, for plaintiff-appellant-appellee.
Satterlee & Mestayer, Henry F. Mestayer, New Orleans, for defendants-appellants-appellees.
Before SAMUEL, REDMANN and STOULIG, JJ.
SAMUEL, Judge.
Plaintiff filed this suit against Precision Motors, Inc., the dealer, Alfa Romeo, Inc., the distributor, and Alfa Romeo (Manufacturer)[1] for recision of the sale of a 1973 Alfa Romeo automobile and for damages. The defendants answered, denying any redhibitory defects.
After trial, there was judgment in favor of the plaintiff and against defendants, "ALFA ROMEO, INC., NEW JERSEY and ALFA ROMEO (Manufacturer), jointly and in solido" in the sum of $11,076.35. The judgment dismissed plaintiff's suit against Precision Motors. The two defendants cast have suspensively appealed from that judgment. Plaintiff also has appealed seeking judgment against Precision Motors in addition to the other two defendants and further seeking an increase in the amount of damages awarded. Plaintiff also has filed a motion to dismiss the appeal taken by Alfa Romeo (Manufacturer).

ON THE MOTION TO DISMISS
Plaintiff seeks to have the Alfa Romeo (Manufacturer) appeal dismissed on the ground that appellant failed to appeal timely.
Insofar as applicable here, Article 2123 of the Code of Civil Procedure provides a suspensive appeal may be taken, and the security therefor furnished, only within fifteen days[2] of "(1) The expiration of the delay for applying for a new trial, as provided by Article 1974, if no application has been filed timely;". In pertinent part, Article 1974 provides that when notice of the judgment is required under Article 1913 the delay for applying for a new trial commences to run on the day after the clerk has mailed, or the sheriff has served, that notice. Also insofar as here applicable, Article 1913 provides that when a case has been taken under advisement by the court, notice of the signing of a final judgment therein shall be mailed by the clerk of court to counsel of record for each party, and that the clerk shall file a certificate in the record showing the date on which, and to whom, notice of the signing of the judgment was mailed.
In the instant case the judgment appealed from was read, rendered and signed May 28, 1974. There was no application for a new trial and the clerk did not mail a notice of the signing of the judgment. Alfa Romeo (Manufacturer) filed its petition for a suspensive appeal, and the appeal order was signed by the trial judge, on March 26, 1975. The appeal bond was furnished on April 10, 1975.
Under these circumstances, without other considerations it would appear the appeal of Alfa Romeo (Manufacturer) was not taken timely. However, immediately following the conclusion of the trial, the trial judge gave oral reasons for judgment from the bench. After giving those reasons, he also made the following oral statement:
"There will be a judgment totalling eleven thousand seventy-six dollars thirty-five cents in favor of the Plaintiff, only *666 against Alfa Romeo, Inc. I don't know if there is such a thing as "Alfa Romeo Manufacturer.' If there is such a corporation, maybe it would be against both."
The written judgment was signed later during the same day (May 28, 1974) on which the oral reasons and statement were given and made from the bench. As has been pointed out, that judgment did not cast only Alfa Romeo, Inc., the specific ruling mentioned in the oral statement; it cast both Alfa Romeo, Inc. and Alfa Romeo (Manufacturer), in solido. Thus, there is a marked discrepancy between the oral statement made from the bench at the conclusion of the trial and the written judgment signed later the same day.
Since he changed his mind regarding the liability of Alfa Romeo (Manufacturer), the trial judge must have reconsidered the matter between the time he made the oral statement and the time he signed the judgment. Under these circumstances, we must conclude he took the matter under advisement after making the statement.
As has been pointed out, when a case has been taken under advisement notice of the signing of the judgment must be mailed by the clerk of court to counsel of record for each party and in the absence of such notice neither the delay for applying for a new trial nor the time for taking the appeal and furnishing the bond begins to run. Applying this law to the instant case, we conclude the time for taking the appeal and furnishing the bond had not begun to run on the dates when the appeal was taken and the bond furnished. Therefore, the appeal of Alfa Romeo (Manufacturer) was taken timely and we deny the motion to dismiss that appeal.

ON THE MERITS
Plaintiff purchased the then new Alfa Romeo automobile from Precision Motors on May 24, 1973 for the price of $5,828.88. The car was manufactured by Alfa Romeo (Manufacturer) and distributed in the United States by Alfa Romeo, Inc., a New Jersey corporation. On May 27, 1973, within three days after the purchase, a leak in the convertible top appeared on the inside near the driver's seat. Precision Motors was notified of the leak, but nothing was done at the time. After several complaints and inspections, a new top was ordered. This top was never installed for the reasons stated below.
On September 21, 1973, plaintiff drove the automobile to Monterrey, Mexico. He testified that on the trip he checked the oil every time he stopped for gasoline. On his return trip, while still in Mexico approximately 10 miles from Monterrey, the car's engine stopped running. The vehicle was pushed to a Mexican service station, but the attendant refused to attempt repair because of his lack of knowledge of Alfa Romeo automobiles. It then was towed to Laredo, Texas, where it was brought to a Volkswagen dealership.
Plaintiff telephoned the manager of Precision Motors, who in turn called Alfa Romeo, Inc. in New Jersey. As a result of these calls, plaintiff was given telephone authorization to bring the vehicle to Jim Williams Motor Company in Laredo for minor repairs only. Apparently it was determined at the Williams Company that the head gasket had blown and the car would not run because of diminished engine compression. The Williams Company was a Fiat dealer, so the nearest Alfa Romeo dealer, in Houston, was ordered to ship a head gasket package for installation. After the head gasket was replaced, the motor still would not run and plaintiff came back to New Orleans, leaving the automobile at Jim Williams Motor Company in Laredo.
Following his arrival in New Orleans, plaintiff received a request[2] to have his *667 automobile sent to California for repairs. Plaintiff refused, and the car was brought back to New Orleans in the back of a Williams Company truck on or about November 3. When the car was returned to New Orleans, its engine had been completely disassembled and the parts thereof were in the automobile's trunk compartment. Plaintiff and defendants' representatives all deny ordering or authorizing Jim Williams Company to disassemble the engine.
Plaintiff and defendants produced persons qualified as experts in the repair of Alfa Romeo automobiles. The testimony of these witnesses is long, involved and at times selfcontradictory. The only conclusion which can definitely be drawn therefrom is that the cause of the malfunction of the automobile in suit is a mystery to them.
A common threat in the testimony of the experts, as well as some of the other witnesses, is an implication that the major cause of the damage to plaintiff's vehicle occurred in Laredo and at Jim Williams Motor Company. The Williams firm, a Fiat dealership, is not equipped for major repairs to Alfa Romeo automobiles. The expert testimony tends to establish that if plaintiff's engine were reassembled with proper parts it probably could run. Moreover, there are distinct markings on the portions of the engine returned with plaintiff's automobile to establish that improper tools, equipment, and procedures were used while repairs were being attempted.[3]
Article 2520 of the Civil Code provides that redhibition is the avoidance of a sale on account of some vice or defect in the thing sold which renders it either absolutely useless or its use so inconvenient and imperfect it must be supposed the buyer would not have purchased the thing sold had he known of the vice. Article 2530 further provides the plaintiff in a redhibitory action must prove the vice existed before the sale was made to him, unless the vice manifested itself within three days of the sale.
The convertible top leak did manifest itself within three days of the sale and was made known to the defendant, Precision Motors. However, a leak in a convertible top is not the type of defect which renders an automobile absolutely useless or its use so inconvenient and imperfect as to come within the purview of Article 2520. Thus, such a defect cannot be the subject of redhibition. In Menville v. Stephens Chevrolet, Inc.,[4] this court refused to grant redhibition in a case where a leak in a convertible top was one of many complaints by the plaintiff. The court instead chose to grant a reduction in the purchase price[5] on the theory that the problem was principally in the nature of excessive and extraordinary maintenance rather than redhibitory defects. Such is the case in the matter now before us, and we conclude that the leak in the plaintiff's convertible top was not of such a nature as to warrant the recision of the sale. Had the motor problem not occurred, a new top could have been installed on plaintiff's automobile and we cannot presume the problem would not have been corrected thereby.
The question of the motor failure and its cause is more troublesome. Defendants correctly argue that recision because of redhibition requires proof of a defect which existed at the time of the sale. Because the automobile's engine had been completely disassembled, no one could testify as to the defect which caused the engine *668 failure. For the same reason, no one could testify whether such a defect existed at the time of the sale.
After the three day presumptive period provided by Article 2530 has ended, it is clear the burden of proof is upon the plaintiff to establish both the existence of the redhibitory defect[6] and its existence at the time of the sale.[7] Many cases have stated the principle that while it is not necessary for the buyer to prove the particular and underlying cause of the defects in a complicated piece of machinery, it is nevertheless necessary that he prove the defect existed.[8]
Further, the record leaves unanswered the question of whether, as a matter of law, plaintiff made sufficient tender of the vehicle to defendants. In Johnson v. H. W. Parson Motors, Inc.,[9] the court approved a jury's finding of the existence of redhibitory defects in a vehicle at the time of its purchase by the plaintiff, but refused to order recision of the sale because the plaintiff secured major engine repairs and was not in a position to return the automobile in substantially the same condition in order to restore the status quo. The court in that case noted the Louisiana rule that if the purchaser undertakes to perform major repairs on the subject of a sale he loses his right to rescind the sale and is relegated to an action in quanti minoris.[10]
Because of the necessity of proof by plaintiff of a defect which existed at the time of the sale and the effect of a major disassembling of the engine upon plaintiff's ability to determine such a defect and properly tender the vehicle back to defendants, the evidence in the knowledge of Jim Williams Company becomes most apparent. If actions on the part of the defendants prevented plaintiff from determining and proving a redhibitory defect, or prevented him from making a proper tender, plaintiff probably is entitled to a judgment. Plaintiff and defendants all deny having authorized the Williams firm to disassemble the engine and the record does not disclose why it was disassembled nor who paid for the work, if any such payment was made. It is highly doubtful the Williams firm of its own accord would have taken that action and then returned the vehicle to Precision Motors without specific instructions and directions and without payment therefor. Consequently, the case will be remanded to the trial court for the introduction of evidence on the issues mentioned above and for judgment following a determination of those issues.
We abstain from any implication of a result to be reached by the trial judge on remand. However, should he again find in favor of plaintiff, we direct his attention to the decision of the Louisiana Supreme Court in Media Pro. Consult., Inc. v. Mercedes-Benz of N. A., Inc.,[11] insofar as that decision relates to the solidary liability of an automobile vendor and manufacturer in redhibitory actions.
For the reasons assigned, the motion to dismiss the appeal is denied, the judgment appealed from is annulled and set aside, and this matter is remanded to the trial court for further proceedings in accordance with law and with the views expressed in this opinion; imposition of costs to await a final determination.
Judgment set aside and remanded.
NOTES
[1] Alfa Romeo (Manufacturer) is also referred to in the record as Alfa Romeo of Italy.
[2] As amended in 1974, effective July 31, 1974, the article now allows thirty days instead of fifteen.
[2] Plaintiff definitely received a telegram, and it also appears from the record that he discussed the matter by telephone.
[3] One expert testified one theory regarding the cause of the nonfunction of the engine was gasoline vapor lock, which would not have completely disabled the engine if it had been properly treated subsequent thereto. In addition, plaintiff's expert stated the possibility that the entire problem could have been caused by the engine overheating because a water hose ruptured or by an improperly secured clamp.
[4] 300 So.2d 858.
[5] See Civil Code Article 2543 et seq.
[6] Article 2520.
[7] Article 2530.
[8] See Segall Co., Inc. v. Rountree Olds Cadillac Co., Inc., La.App., 270 So.2d 629.
[9] La., 231 So.2d 73.
[10] See also LaFleur v. Boyce Machinery Corporation, La.App., 282 So.2d 819.
[11] 262 La. 80, 262 So.2d 377.