LOTTINGER, Judge.
This is a suit seeking the avoidance of the sale of an automobile because of a redhibi-tory defect which occurred in the said vehicle. The Trial Court rendered judgment in favor of the defendant and dismissed plaintiff’s claim, and plaintiff has perfected this appeal.
The defendant has been the sole Ford dealer in the City of Thibodaux for many years. In connection with his Ford agency, the defendant sells used cars which are taken in as trade-ins.
On July 19, 1974, plaintiff and his wife went to defendant’s place of business for the purpose of purchasing a used automobile. After examining several automobiles, they purchased a 1967 automobile for the sum of $695.00.
Plaintiff testified that following the purchase he drove the car off the defendant’s parking lot and experienced no trouble or problems with the car until the night of August 2, 1974. Between the time of the sale and the time when the alleged trouble occurred, plaintiff had driven the automobile a distance of 734 miles, of which some *1305 portion was in the city and the other was on the highway. While driving the car on the evening of August 2, 1974 along the Hou-ma-Thibodaux Highway, a fire started under the hood which resulted in extensive damage to the engine rendering the car a total loss. This suit was brought to rescind the sale alleging a breach of warranty and, in the alternative, redhibitory vices. In a well reasoned opinion, the Trial Judge held that the plaintiff had failed to sustain its burden of proof and, accordingly, dismissed the suit.
With regards to the breach of warranty, the evidence discloses that it is the policy of the defendant, in selling cars of such a low value, that the sale be made without warranty. The testimony of the sales manager, the salesman and plaintiff’s wife, as well as the exhibits filed in the record disclose without question that such was the ease in the sale to plaintiff. He was not only told verbally that the sale was made without warranty, but he signed an agreement to the effect that the sale was without guarantee or warranty. We, therefore, feel that the Trial Court was correct in holding that there was no guarantee or warranty.
Redhibition is defined in Article 2520 of the Louisiana Civil Code as follows:
“Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use is so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.”
Article 2530 of the Civil Code places the burden of proving that the defect existed before the sale on the purchaser, unless the defect appears within a three day period of the sale, to wit:
“The buyer who institutes the redhibitory action, must prove that the vice existed before the sale was made to him. If the vice has made its appearance within three days immediately following the sale, it is presumed to have existed before the sale.”
Although it is not necessary for the purchaser to prove the particular and underlying cause of the defect in a complicated piece of machinery, it is nevertheless, necessary that he prove that the defect existed prior to the time of the sale. Guillory v. Morein Motor Company, Inc., 322 So.2d 375 (La.App. 3rd Cir. 1975).
Once the three day presumptive period provided by LSA-C.C. art. 2530 has expired, the plaintiff has the burden of proving both the existence of the redhibito-ry defect and that it existed at the time of the sale. Margan v. Precision Motors, Inc., 317 So.2d 664 (La.App. 4th Cir. 1975).
The evidence clearly shows that after the automobile was purchased on the 19th day of July it ran well, without any trouble whatsoever, until August 2 when the trouble occurred. This was a period of 13 days. Plaintiff testified that he drove the car both in the city and on the highway a total of 734 miles before the fire occurred. Between the time of the purchase and the time of the fire, he purchased gas at a local service station on several occasions at which time the usual checks under the hood were made. Both experts who testified in this case were of the opinion that the fire was not an electrical one but was a gasoline fire which originated in or around the carburetor of the automobile.
In summarizing the evidence presented on the question of redhibition, the Trial Judge said:
“Plaintiff produced as his expert Mr. Henry Eschete who operates his own repair shop in Thibodaux. Mr. Eschete testified that his examination and inspection of the automobile was limited to a visual inspection under the hood. He testified that he did not take the carburetor or any part of the engine down to examine the parts inside to see if they were worn or defective. He also admitted on cross-examination that had this been done he would be in a position to give a more definite conclusion as to the cause of the fire. Mr. Eschete testified that the cause of the fire had to be either a defective needle-valve in the carburetor or a defec *1306 tive accelerator pump or a defective timing chain or a dirty air filter. On cross-examination Mr. Eschete admitted that trash in the gasoline was also a factor that could be considered. Mr. Eschete testified that he could not say which of the above was the actual cause of the fire since he did not take the carburetor or engine apart to examine each individual part. Mr. Eschete was of the opinion that the fire originated as a result of worn or defective parts in the 4 first above mentioned components of the engine. He further concluded that since the fire did take place these parts had to be either worn or defective at the time the sale took place.
“Defendant produced as its expert Mr. Elbert Gaudet. Mr. Gaudet has been in the automobile repair business for over 30 years and for a number of years has been shop foreman at Autohome Buick Garage in Thibodaux, Louisiana. Mr. Gaudet testified that from his experience over the years the most common cause of fire originating under the hood of an automobile is either electrical or gasoline. In this case he eliminated an electrical fire because the main damage was confined to the carburetor and air filter under the hood. Mr. Gaudet further testified that in his experience the most common cause of gasoline fires in both used and new cars is trash in the gasoline working its way into the carburetor and causing the needle-valve to become stuck in an open position and allowing gasoline to continue to flow into the carburetor and eventually overflowing unto the hot engine. Mr. Gaudet was of the opinion that the fire was a result of an excessive amount of gas going into the carburetor and eventually overflowing unto the hot engine. Mr. Gaudet was of the opinion that a worn needle-valve in the carburetor would not be the cause of the fire. He stated that even if the needle-valve was worn and not seating completely there would still be sufficient closure to prevent an excessive amount of gas from entering the carburetor and eventually overflowing unto the engine, especially while the automobile was running. He was also of the opinion that the fire was not caused by a worn or defective accelerator pump in the carburetor. He stated that the purpose of the accelerator pump is to pump gasoline from the line to the carburetor. If the pump is not working no gasoline will enter the carburetor and hence no fire. He was also of the opinion that a dirty air filter was not the cause of the fire. He was of the opinion that a dirty air filter would smother a fire originating in the carburetor. He was also of the opinion that should the timing chain jump or be defective this likewise would not cause a fire but on the contrary would cause the engine to stop running. Mr. Gaudet’s opinion, like that of Mr. Eschete’s, is based on past experience as their examination of the car was limited to visual inspection under the hood. Mr. Gaudet’s opinion that the fire originated as a result of trash lodging between the needle-valve was based on 2 premises. The first being that in his experience this is the most common cause of fire in a carburetor. The second being that if at the time of the sale there was a defective needle-valve or a defective accelerator pump or a dirty air filter or a worn or defective timing chain Mr. Harris would have become aware of this before he drove the automobile 734 miles. Mr. Gaudet was of the opinion that if these parts were worn or defective the engine would not have run properly and that Mr. Harris would have experienced the engine running rough or the engine stopping on him at intersections or flooding.
“Based on the testimony and evidence presented, including the testimony of Mr. Harris that during the period of time that he drove this automobile 734 miles it operated smoothly and satisfactory and that he experienced no problems with it, the Court is more impressed with Mr. Gaudet’s opinion or version as to how the fire originated. Being of the opinion that plaintiff has not carried the burden of proving that a defect existed in the en *1307 gine of the car at the time of the sale on July 19, 1974 judgment will be entered for defendant.”
We agree that the plaintiff has failed to show by a preponderance of the evidence that the defect, if there was one, existed in the automobile prior to the time of the sale.
Therefore, for the above and foregoing reasons, the Judgment of the Trial Court is affirmed. All costs of this appeal to be paid by plaintiff-appellant.
AFFIRMED.