REGAN, Judge.
This suit was instituted by John Vela to recover the sum of $6,500.00 which he asserts was lent to the defendant, Mario Slavich, on May 11, 1959. When this case was tried in the lower court, plaintiff was dead and, therefore, Peter Vela, the executor of his estate, was substituted for him as party plaintiff.
Defendant answered and insisted that the transaction of May 11, 1959, was a donation inter vivos of $6,500.00 accompanied by manual delivery thereof to him. In the alternative, the defendant pleaded the extinction of his indebtedness to plaintiff by compensation, predicating this plea on the theory that the plaintiff owed him the amount of $6,500.00 for work which he had previously performed.
From a judgment in favor of plaintiff, the defendant has prosecuted this appeal.
The record reveals that the plaintiff, who immigrated to this country over sixty years ago, resided at Fort St. Philip, which is located on the Mississippi River below New Orleans. It is agreed by all parties that on May 11, 1959, a transaction occurred between the plaintiff and the defendant, whereby plaintiff delivered two checks to the defendant in the presence of his wife, Rita Slavich. The checks were in the respective amounts of $3,500.00 and $3,000.-00 and were drawn on different banks.
They were completed by Mrs. Slavich and then signed by the plaintiff.
At this point in the trial hereof, the evidence offered by the respective litigants becomes conflicting. Since the plaintiff died before the trial of this case, his counsel introduced into evidence a deposition taken by one of the defendant’s attorneys. Objection was made to the introduction thereof; however, counsel for the defendant has not renewed his objection in this court.
John Vela related through the medium of the foregoing deposition that the sum of $6,500.00, which he delivered to the defendant, constituted a loan for which he expected defendant to sign a promissory note secured by a second mortgage on the real estate purchased with this money. He testified that the defendant formerly worked for him and resided in his home for several years and that he made the loan because of the friendship which had developed between them. He insisted that he told the defendant that he would have to sign a note for the amount loaned at 4% per annum interest. He further said that the defendant brought certain “papers” to him after he made the down payment on his home and promised at that time to return and execute the note and mortgage.
It is significant to note that some of the plaintiff’s testimony contained in the deposition tended to cast doubt on the accuracy of the foregoing statements. He admitted, for example, that he had never discussed the matter with the defendant in the presence of any other person, despite the .fact he and defendant were together on innumer *748 able occasions in the presence of other people after the transaction occurred.
In addition thereto, his testimony was conflicting in two other respects. When asked whether he ever loaned any other person -money without requiring a note as security therefor, the plaintiff initially said that he had loaned money without the security of a note, but later denied that he ever conducted business in such a manner. He also admitted in the deposition that he had given one Joe Yuratich $10,000.00 within the last three to five years because !iI know him a- long time.” However, in the conclusion of the deposition, he vehemently denied that he had ever made donations of money at any time during his life.
The other evidence offered by the plaintiff consisted of the testimony of Peter Vela, two friends of John Vela, and John Vela’s attorney. All of these witnesses agreed that they possessed no actual knowledge of the transaction.
Peter Vela testified that he entered the United States in November of 1960 and resided with his uncle for four months before matriculating at Louisiana State University. Thereafter he visited his uncle’s home only on weekends. In substance, his testimony is to the effect that the only actual knowledge he possessed of the matter was that he saw one check drawn to the order of the defendant. He also remembered that the defendant discontinued visiting his uncle after he was requested to offer security for the money loaned.
Luke Petrovich testified that he had been John Vela’s attorney since 1955, and that during the period in which he represented Vela it was Vela’s practice to make loans and then arrange for the signing of the necessary notes and mortgages thereafter. Contrary to what Vela said in his deposition, Petrovich testified that he had never contacted the defendant directly, even though he endeavored to do so on several occasions. When questioned about his actual knowledge of the transaction, Petrovich conceded that his only knowledge thereof was obtained from Vela’s statements.
Franklin A. Ashby, an “oil man” and long time friend and confidant of John Vela, testified that he had complained to him on several occasions that the defendant had borrowed money and had refused to sign a note or make any payments on account thereof. Ashby further related that he often advised Vela in connection with his business affairs and that he had never known of Vela’s making any substantial gifts of money. However, his testimony clearly indicates that he likewise possessed no actual knowledge of the matter.
Finally, counsel for the plaintiff offered the testimony of Wallace H. Cran, the husband of John Vela’s niece and a partner in one of his business enterprises. Cran related that the plaintiff had complained to him on innumerable occasions that the defendant was endeavoring to avoid repayment of the loan. He was not sure of the exact time when Vela became uneasy relative to the defendant’s financial indiscretions, but he estimated that it was some time during the year of 1960. In addition thereto, he said that Vela resided the last year and one-half of his life in Cran’s home, and that the only source of his knowledge concerning the loan were statements which emanated entirely from John Vela during that period of time.
The case for the defendant consisted of his own testimony and that of his wife. He related that prior to the year of 1957 he had been employed by the plaintiff at Fort St. Philip at a salary ranging between $25.00 and $50.00 a week, plus room and hoard. During this time plaintiff and the .defendant resided in the same house, and as a result thereof developed a very cordial friendship. He further testified that he gratuitously rendered many services for the plaintiff during that period and on various weekends after he left the plaintiff’s employ in 1957. In explanation thereof, he said that he repaired eight tin roofs, con *749 structed four skiffs, replaced a roof on plaintiff’s packing house, and performed other manual services for him without compensation.
He asserted that because of his kindness and as a result of the friendship which existed between them, the plaintiff desired to assist the defendant and his wife in the acquisition of a home. He therefore insists that the plaintiff made a gift of the money to him so that he could make a down payment on a home in the Aurora Gardens subdivision.
On cross-examination the defendant was interrogated as to why he brought the contract to purchase the property and the receipt for the down payment to the plaintiff. Defendant, in response thereto, answered that it was his intention to show the plaintiff that he had used the money for the purpose for which it was given him, and that he did not bring the documents so that the plaintiff could use the information contained therein for the execution of a second mortgage.
Mrs. Rita Slavich, in substance, completely corroborated the defendant’s testimony. She asserted that she had gratuitously performed many tasks for the plaintiff, including caring for him during various illnesses and washing his clothes, and that a true friendship had thereby arisen between plaintiff on the one hand and her husband and herself on the other. She was positive that the transaction of May 11, 1959, was in fact a donation of the money, and that at no time did the plaintiff state that it was to be a loan. In addition thereto, she related that on several occasions after the acquisition of their home, the plaintiff visited them, and not once did he even suggest that he expected the money to be repaid.
It is thus apparent that the respective versions of the transaction of May 11, 1959, are irreconcilable. The lower court, after hearing the testimony, concluded that the transaction was in fact a loan, and accordingly rendered judgment in favor of plaintiff in the amount of $6,500.00.
The court, in reaching the foregoing conclusion, simply reasoned that the fact that Vela was endeavoring to obtain a note from Slavich, and the further fact that Vela instituted suit to recover the $6,500.00, negated defendant’s contention that the transaction was a gift.
After judgment was rendered, defendant filed a motion for a new trial on the basis that he had obtained newly discovered evidence. This motion, however, was denied.
On appeal, defendant specified that the following errors existed in the lower court’s judgment:
1. Plaintiff failed to sustain the burden of proving that the transfer was a loan.
2. The lower court did not find that the claim of the plaintiff was extinguished by compensation.
3. The Judge thereof should have permitted the defendant to offer the testimony of an additional witness in rebuttal.
At the outset it should be made quite clear that the record leaves no doubt relative to the invalidity of the defendant’s plea of compensation. Several times during their testimony both the defendant and his; wife asserted that the work which was performed for the plaintiff, which defendant now sets up as the basis for his plea of compensation, was performed gratuitously and without any expectation of remuneration. Therefore, by virtue of the admissions of the defendant and his wife, it is quite clear that there exists no foundation for the plea of compensation.
After considering the record in its present posture, we have become aware of the difficulty in reaching a conclusion as to the donative intent of John Vela on May 11, 1959, especially since he was deceased when the trial hereof occurred. Under these circumstances we are inclined to favor the *750 argument of counsel for the defendant, who emphasizes that he requested and obtained permission of the trial judge to offer an additional witness in rebuttal of the plaintiff’s, case. However, after the conclusion of the plaintiff’s rebuttal testimony, the trial court terminated the case without affording counsel for the defendant an opportunity to elicit such rebuttal testimony.
In view of the peculiar and ephemeral nature of the 'evidence adduced in the trial court, it is our opinion that the ends of justice would be better served if all of the evidence pertaining to the intention of the parties at the time of the transaction were offered to the court. If there exists a witness whose testimony will further enlighten the court, a just decision hereof requires its full consideration, irrespective of any laxity on the part of counsel. As the organ for the Supreme Court stated in the Succession of Robinson: [1]
“The trial judge’s ruling is subject to review and is not final, and where, an injustice is done and substantial rights are lost through mere technicalities, it is our duty to interfere. * :|t * The modern trend of the jurisprudence in the trial of lawsuits is to render justice upon the merits of the controversy, rather than defeat justice upon technicalities. In the instant case, with due deference to our learned brother below, it is our opinion that he arbitrarily exercised the discretion vested in him by law in refusing to reopen the case or to grant a new trial, which was manifestly in the interest of justice.”
For the reasons assigned, the judgment appealed from is affirmed insofar as the defendant’s plea of compensation was denied, and in all other respects the judgment appealed from is annulled and set aside, and the case is remanded to the District Court for further proceedings consistent with the views hereinabove expressed; all costs are to await the final disposition of the case.
Affirmed in part; annulled in part and remanded.

. 186 La. 389, 172 So. 429 (1936).