YARRUT, Judge.
This suit was brought March 28, 1962, by Plaintiff to recover a $6,500.00 loan he allegedly made to Defendant on May 11, 1959, a few months before the three-year prescriptive period would have accrued. The money was furnished in the form of two checks payable to Defendant, one for $3,000.00 and one for $3,500.00, on two different banks.
Defendant admitted receiving the checks but pled the checks were an inter vivos donation, and did not represent a loan; and, alternatively, if the Court finds it was a loan and not a donation, then the amount should be compensated and offset by Plaintiffs indebtedness to him of $6,500.00 for various services rendered Plaintiff.
Before the first trial was held, Plaintiff died, but his deposition had been taken and offered in evidence. His nephew, as Executor of his Succession, was substituted as party Plaintiff. Notwithstanding this, all references to “Plaintiff” will be to the original Plaintiff, John Vela.
The District Court held the checks given Defendant by the Plaintiff were for a loan and not a gift, and rendered judgment against Defendant. Defendant sought a new trial to take the testimony of another witness which the District Judge refused.
On appeal to this Court we affirmed the District Court’s rejection of Defendant’s plea in compensation and set-off, but remanded the case for the taking of the testimony of a tendered witness on the question of whether the checks were a loan or gift. (See La.App., 162 So.2d 746.)
On the second trial, a different district judge presided and rendered judgment, as did the first judge, for Plaintiff as prayed; hence, this present appeal.
There is no question that on May 11, 1959, Plaintiff handed Defendant two checks to-talling $6,500.00 of which Defendant used $5,500.00 as the down payment on the purchase of a home for $25,500.00, and $1,000.-00 for furniture. The sole issue is whether the money was a loan or a gift to Defendant.
At the first trial, in his deposition taken before his death, Plaintiff testified that he loaned Defendant the $6,500.00 at 4% interest, and thereafter repeatedly requested Defendant to sign a note, which Defendant consistently refused to do; that he immediately contacted his attorney, Luke Petrovich, who sent Defendant telegrams and registered letters asking him to sign the note and to execute a second mortgage, which requests Defendant ignored. When asked if he ever loaned money without requiring a note, he first said “some sign and some don’t.” Later he testified “everybody has got to sign.” When asked if he had ever given anyone any money, he answered that he gave a friend, Joe Yuratich, $10,000.00. However, at the conclusion of his testimony, he denied he had ever given anyone anything. Nevertheless, he did consistently contend that the money was a loan and not a gift. Plaintiff was a man about 80 years old, not too literate, was ill and had to be hospitalized frequently; therefore, it is natural that there would be discrepancies in his testimony.
*597 Although Plaintiff testified he contacted his attorney, Mr. Petrovich, immediately after he made the loan, and that Mr. Petro-vich sent telegrams and letters to Defendant, Mr. Petrovich testified that Plaintiff did not call him about the matter until two years later and that, although he did try to contact Defendant, he did so only once (unsuccessfully) by telephone. However, Mr. Petrovich did testify that it was not unusual for Plaintiff to lend money and then arrange for the debtor to sign a note thereafter.
Plaintiff’s Executor (his nephew) testified only to the effect that he did not believe his uncle would have given Defendant the amount of money in question, and that Defendant stopped seeing his uncle after the alleged gift. Two friends of Plaintiff testified Plaintiff told them that Defendant owed him money and that, as far as they knew, Plaintiff was not accustomed to making gifts of substantial sums of money.
Defendant testified that he worked for Plaintiff for 12 years at his home at Fort St. Philip, Plaquemines Parish; had lived with him at his home until 1957 when he moved to New Orleans, and for the next two years worked for him on weekends only; that his work consisted mostly of farming and making repairs; that a friendship had developed between himself and Plaintiff, who had been like a father to him; when Plaintiff gave him the checks he told Plaintiff that he could not make the mortgage payments and pay him back too; whereupon Plaintiff told him not to worry because he was giving him the money; and although he saw Plaintiff on numerous occasions after he received the money, Plaintiff had never asked him to execute a mortgage or sign a note.
Defendant’s wife, who testified she was present at the time Plaintiff gave Defendant the checks, corroborated her husband’s story.
It is true that there was a close relationship between Plaintiff and Defendant. However, Plaintiff paid Defendant $50.00 a week and furnished board and lodging during his 12 years of employment. This close relationship between the two doesn’t necessarily argue in favor of a donation, but seems to argue more strongly to explain why Plaintiff was not too persistent in demanding that Defendant execute the note and mortgage, but waited until the th’ree-year prescription was about to accrue before instituting suit to recover the $6,500.00 from him.
During the trial after the remand of the case, Mr. Morris Hyman, the real estate developer who sold Defendant his home, and the father-in-law of one of the defense attorneys, testified he visited Defendant at his home on several occasions when Plaintiff was present and that Plaintiff told him he had given Defendant the money to purchase his home. However, Mr. Hy-man was extremely vague about details and repeatedly said that he could not remember them. For example, he could not remember what year, what season or what time of day he visited Defendant; how many times he visited him; how long he stayed; and was not sure whether or not he held a mortgage on Defendant’s home.
With regard to the burden of proof, our Supreme Court has held that the burden of proving a gift is on the donee, and the proof must be strong and convincing. Funderburk v. Funderburk, 214 La. 717, 38 So. 2d 502 and Succession of Woolfolk, 225 La. 1, 71 So.2d 861.
However, in Moody v. Gossen, the Third Circuit Court of Appeal, 125 So.2d 264, held (1) that manual delivery presumes a gift and (2) that no one is presumed to give, are of equal strength; that one should not prevail over the other and, therefore, the general rule of evidence applies, namely, that the plaintiff bears the burden of proof. This holding was followed in Young v. LeBlanc, La.App., 144 So.2d 905, where this Court held that “the presumption against a gift is counteracted by the presumption *598 that an otherwise unexplained delivery establishes a donation.”
Since neither of these last two cases were reviewed by the Supreme Court on certiorari, we must be guided and bound by the holdings in the two Supreme Court cases cited supra.
As Defendant did not sustain the burden of proof that the two bank checks were a gift, and not a loan, which the two district judges had to conclude in order to decide for Plaintiff, the judgment of the District Court is affirmed; Defendant to pay all costs in both courts.
Judgment affirmed.