390 So.2d 219 (1980)
Benny HARRISON et al., Plaintiffs-Appellees,
v.
SOUTH CENTRAL BELL TELEPHONE COMPANY, Defendant-Appellant.
No. 7815.
Court of Appeal of Louisiana, Third Circuit.
October 8, 1980.
Rehearing Denied December 1, 1980.
Writ Refused January 26, 1981.
*220 Ledbetter, Percy & Stubbs, J. Michael Percy, Alexandria, for defendant-appellant.
Eugene P. Cicardo, Alexandria, for plaintiffs-appellees.
Trimble, Randow, Smith & Wilson, James T. Trimble, Jr., Alexandria, for defendant-appellee.
Before FORET, STOKER and LABORDE, JJ.
FORET, Judge.
This is a suit for personal injuries allegedly sustained by Benny Harrison and his wife, Joyce Harrison. A separate suit had been filed by Benny Harrison on behalf of his minor child, Joseph Harrison. The trial judge refused to consolidate the two suits for trial, the latter suit having been filed on December 13, 1979, the trial date being January 17, 1980.
Made defendants herein are South Central Bell Telephone Company and Morton Henderson, its employee. The defendants filed a third party demand against the City of Pineville, Louisiana. The trial court rendered judgment against South Central Bell Telephone Company and in favor of plaintiffs herein.[1] On the third party demand, the trial court rendered judgment dismissing that demand against the City of Pineville.
No assignment of error is raised by South Central Bell as to the trial court's finding of liability on the part of South Central Bell and its employee, Morton Henderson, and therefore the trial court judgment on that issue is affirmed. Likewise, no issue is raised on appeal by South Central Bell as to that portion of the trial court judgment dismissing South Central Bell's third party demand against the City of Pineville. Accordingly, we will affirm the trial court's judgment in that regard.[2]
In view of the result reached by this Court, we need only discuss two issues raised on appeal by South Central Bell:
(1) Whether the trial court erred in refusing to grant a continuance in view of alleged drastically changed medical conditions of the two plaintiffs which came to defendant's knowledge just prior to the assigned trial date, and
*221 (2) The refusal of the trial court to grant a motion for consolidation of the suit of Benny Harrison and Joyce Harrison with the separate suit filed by Benny Harrison on behalf of his minor child, Joseph Harrison.

ISSUE OF DENIAL OF MOTIONS FOR CONTINUANCE
In order for the reader to properly understand the situation which existed, we set forth, as follows, the chronology of events leading up to the denial of the motions (actually there were two) for continuance.
The auto accident in which plaintiffs were injured occurred on December 27, 1978. Suit was filed by Mr. and Mrs. Harrison in May of 1979. The trial court issued an order on August 8, 1979, setting January 4, 1980 as the date on which the pre-trial conference would be held. This order also set January 17, 1980 as the date for trial. It should be noted further that the trial court ordered that all discovery be completed by January 4, 1980.
Appellant filed its first motion for a continuance on January 2, 1980. Appellant stated that it had learned of a substantial deterioration in the health of Mr. Harrison only recently. Appellant argued that it would be impossible to discover the results of a myelogram as these would only be available some time after January 4, 1980, the date set for the completion of discovery. The trial court denied the appellant's motion for a continuance, saying it came too late.
The following is the medical history of Benny Harrison, which we feel is pertinent to our decision. After the accident, Mr. Harrison was referred by his attorney to Dr. John M. Patton, an Alexandria neurosurgeon. Dr. Patton first saw this plaintiff on March 29, 1979. The doctor's long-term prognosis, after examining Benny Harrison, was that he would completely recover. He prescribed medication for the neck pain and muscle spasm which Benny Harrison was experiencing. He also had a cervical spine x-ray of the plaintiff taken at Rapides Parish General Hospital. Benny Harrison next saw Dr. Patton on April 19, 1979. He stated that he still had neck pain, although he was feeling better. The doctor instructed him to continue taking the analgesics which he had prescribed for the pain. Dr. Patton also reviewed the x-rays of Benny Harrison taken at Rapides General Hospital. The doctor concluded that Benny Harrison was probably suffering from cervical osteodegenerative disease, which, in all likelihood, existed before the auto accident.
Benny Harrison saw Dr. Patton again on May 26, 1979. He complained that his symptoms were getting worse. Dr. Patton concluded that Benny Harrison's health had deteriorated somewhat based on the medical findings of numbness and decrease in reflex in his arm. It was at this time that Dr. Patton informed Benny Harrison that surgery was a possibility if he showed no improvement. Benny Harrison's next visit was made on July 31, 1979. He stated on this visit that he felt a definite improvement in his health. Dr. Patton's examination revealed that Benny Harrison was completely normal except for slight pain in his neck. He still felt that Benny Harrison was suffering from cervical spondylosis, a degenerative disease.
Benny Harrison returned to see Dr. Patton on November 19, 1979. He was complaining of neck pain and numbness in his left arm. Dr. Patton's examination revealed no cervical spasms, but did confirm Benny Harrison's complaints of neck pain and numbness in the left arm. Dr. Patton ordered a nerve conduction study run on him. The results of this study were normal. Benny Harrison's next visit came on December 24, 1979. His health had deteriorated substantially at this time. Dr. Patton concluded that he was unresponsive to conservative therapy. He ordered Benny Harrison admitted to Rapides General Hospital for cervical myelography.
Appellant, South Central Bell, propounded written interrogatories to Benny Harrison on December 6, 1979. Benny Harrison waited until December 27, 1979, before serving his answers to the interrogatories on appellant. It was at this time that appellant *222 learned of Benny Harrison's December 24, 1979 visit to Dr. Patton. It also learned of the substantial deterioration in his health. Appellant was notified that a myelogram was scheduled to be run on Benny Harrison on January 4, 1980.
Appellant alleges that it immediately initiated discovery procedures in an attempt to gather evidence relating to this change in Benny Harrison's health. However, its attempt to discover this evidence was denied by the trial court, apparently as coming after the deadline set by the trial judge for the completion of discovery. Also, as noted above, appellant's motion for continuance based on this change in Benny Harrison's health had been denied by the trial court.
We turn now to the appellant's second motion for continuance filed on January 15, 1980. Appellant received a new medical report form Joyce Harrison's counsel on January 5, 1980. The report indicated that Mrs. Harrison had returned to Dr. John M. Patton on December 31, 1979, two weeks before trial, complaining of additional symptoms. Her last office visit before this was made on June 26, 1979. The June medical report shows that Joyce Harrison was doing very well. She indicated that she had no neck pains or headaches until approximately two weeks before that visit. She told the doctor that she had accidentally fallen down some stairs and hurt her neck some two weeks before that visit. Dr. Patton's examination showed that Joyce Harrison was normal in all respects. He prescribed an analgesic for her neck pain.
The next time Joyce Harrison saw Dr. Patton was on December 31, 1979. She indicated to the doctor that her neck pain and headaches had bothered her ever since the accident. This was contrary to the information she gave to Dr. Patton during the June 26, 1979 office visit. Dr. Patton noted that Joyce Harrison's head and neck pains were of an undetermined origin. He instructed her to see him again in a month.
Appellant argued in the second motion for continuance that there would be no opportunity for it to discover the nature of the change in Mrs. Harrison's health or the doctor's opinion in connection therewith. It set these forth as the grounds upon which it was seeking the continuance. The trial court denied that motion without giving reasons. Appellant argues that the trial court abused its discretion in refusing to grant either of these motions for continuance.
It is a well established rule that the trial judge has wide discretion in acting upon a motion for continuance. His ruling will not be disturbed on appeal in the absence of a clear showing of an abuse of that discretion. LSA-C.C.P. Article 1601[3]; Sauce v. Bussell, 298 So.2d 832 (La.1974); Lambert v. Heirs of Adams, 325 So.2d 331 (La.App. 3 Cir. 1976), writ denied, 329 So.2d 458 (La. 1976).
We are unable to say it would have been an abuse of that discretion if the trial court had granted appellant's motion for continuance. Conversely, we are also of the opinion that the trial judge did not clearly abuse his discretion in denying appellant's motions for a continuance.
However, in view of its denial of the motions for continuance, the trial court should have left the case open for the introduction of additional evidence on the medical aspects of the case. Further, based on the relatively recent occurrence of such drastic changes in Benny and Joyce Harrison's health, we believe that the trial court should have amended its pre-trial order to allow both parties to conduct additional discovery.
We feel that the late changes in the health of Mr. and Mrs. Harrison went to the very heart of their case. They had the burden of proving that the injuries they were suffering from were related to their accident with appellant's employee. In addition, they had to prove the extent of the damages which they suffered. There was *223 also a question dealing with the duty of an injured claimant to mitigate his damages. These are very serious issues which relevant evidence would have helped to answer. Yet, appellant was precluded from discovering and presenting to the trial court relevant evidence that may have been favorable to its side. The trial court apparently felt that appellant did have enough time to gather such evidence on its behalf. We disagree.
The record shows no motion made by the appellant to keep the case open for the introduction of additional evidence. However, the pre-trial order filed on January 10, 1980, does show that the trial court refused to hold the case open for the filing of late depositions. Further, the record also shows that the trial court's order of August 8, 1979, requiring that all discovery and depositions be completed by January 4, 1980, was never amended. The decision to hold open or re-open a case for the production of additional evidence rests within the sound discretion of the trial judge, which decision will not be disturbed on appeal unless manifestly erroneous. LSA-C.C.P. Articles 1631 and 1632[4]; see also Official Comment to Article 1632; Dupre v. Hartford Accident & Indemnity Company, 200 So.2d 753 (La.App. 3 Cir. 1967).
We hold that it was manifestly erroneous for the trial court to refuse to hold the record open for the introduction of additional evidence after it had denied the motions for continuance. It is our opinion, after thoroughly reviewing the record, that the very serious issues of cause-in-fact of the plaintiffs' injuries, quantum, and mitigation of damages, were decided on the basis of a limited amount of evidence. The objective of our judicial system is to render justice between the litigants upon the merits of the controversy, rather than to defeat justice upon technicalities. Succession of Robinson, 172 So. 429 (La.1936); Aetna Casualty and Surety Company v. Johnson, 242 So.2d 119 (La.App. 4 Cir. 1970); Vela v. Slavich, 162 So.2d 746 (La.App. 4 Cir. 1964). We feel that the ends of justice will best be served by remanding this case to the trial court.

ISSUE OF DENIAL OF MOTION FOR CONSOLIDATION
The second issue presented by appellant is whether the trial court abused its discretion in refusing to consolidate the suit filed on behalf of Joseph Harrison with the original suit filed by his parents, Benny and Joyce Harrison. Inasmuch as the trial of Benny Harrison, et al. v. South Central Bell, for the most part, has already taken place, the issue of consolidation is now moot. Defendant had the opportunity to apply for a supervisory writ to this Court to remedy the alleged error of the trial court in failing to grant the consolidation. This, defendant did not do and consequently, that issue is now moot.
*224 For the reasons assigned, the judgment of the trial court is affirmed in part and set aside in part. The case is remanded to the trial court for a re-determination of the issues of cause-in-fact of the plaintiffs' injuries, quantum, and duty to mitigate damages. The trial court is instructed to re-determine these issues on the basis of the original evidence and any additional evidence adduced by the parties related to those issues. The case is to be re-opened for the introduction of such evidence for a period of time which the trial court deems reasonable.
Costs of this appeal are assessed against plaintiffs-appellees.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
NOTES
[1] The trial court's judgment fails to make any mention of Morton Henderson, appellant's employee.
[2] RULE IX-A. SCOPE OF REVIEW

The scope of review in all cases within the appellate and supervisory jurisdiction of the Courts of Appeal shall be as provided by Art. 5, § 10(B) of the Louisiana Constitution of 1974 and Article 2164 of the Louisiana Code of Civil Procedure. Ordinarily, however, the Courts of Appeal will review only issues which were submitted to the trial court and which are contained in the specification of errors in the briefs or in an application for writs, unless the interest of justice clearly requires otherwise. Adopted, effective Dec. 1, 1977.
[3] "Art. 1601. Discretionary grounds

A continuance may be granted in any case if there is good ground therefor."
[4] "Art. 1631. Power of court over proceedings; exclusion of witnesses

The court has the power to require that the proceedings shall be conducted with dignity and in an orderly and expeditious manner, and to control the proceedings at the trial, so that justice is done.
On its own motion the court may, and on request of a party the court shall, order that the witnesses, other than parties, be excluded from the courtroom or from a place where they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the case. In the interest of justice, the court may exempt any witness from its order. As amended Acts 1966, No. 36, § 1.
Art. 1632. Order of trial
The normal order of trial shall be as follows:
(1) The opening statements by the plaintiff and the defendant, in that order;
(2) The presentation of the evidence of the plaintiff and of the defendant, in that order;
(3) The presentation of the evidence of the plaintiff in rebuttal; and
(4) The argument of the plaintiff, of the defendant, and of the plaintiff in rebuttal, in that order.
This order may be varied by the court when circumstances so justify.
When an action involves parties in addition to the plaintiff and the defendant, the court shall determine the order of trial as to them and the plaintiff and the defendant.
Source: C.P. Arts. 476, 477, 485; cf. R.S. 15:333."