CUTRER, Judge.
This appeal arises out of a suit for death benefits by a surviving parent under the provisions of the workmen’s compensation statute, LSA-R.S. 23:1231.
Larry Stutts, Jr. (Larry), an employee of Davis & Sons disappeared from his job as a pumper helper on a tank battery located in Grand Bay, Plaquemines Parish, Louisiana, April 28, 1981. A few days later, Larry’s body was found floating under a boat dock in the bay by C. B. Guthrie, an employee of Gulf Oil Company. The cause of Larry’s fall remains unknown but the circumstantial evidence shows that he somehow fell overboard from the tank battery.
Larry is survived by his father, Larry Stutts, Sr. (plaintiff), his mother, Susie Reed (Mrs. Reed subsequently married Ben Reed upon the dissolution of her “marriage” to plaintiff), and Mrs. Fannie C. Ballard (Fannie), his maternal grandmother, with whom he had lived since he was two years old up until the time of his demise.
Davis & Sons informed its insurer, Liberty Mutual Insurance Company (Liberty Mutual), of the accident vis á vis the forms which had been provided by it. On May 21, 1981, plaintiff, through his attorney, made written demand on Liberty Mutual for the death benefits due him as provided by statute. Liberty Mutual refused payment to plaintiff on the grounds that Fannie was a dependent and was entitled to weekly com *1328 pensation payments. No payments, however, were made to Fannie.
On July 28, 1981, more than sixty days from written demand, plaintiff filed this suit. The trial judge rendered judgment awarding plaintiff $20,000.00 as death benefits due to a surviving parent of an employee who has no legal dependents. The trial court also awarded penalties and attorney’s fees.
From this adverse judgment, Liberty Mutual appealed. The issues presented on appeal are whether the trial court erred in making the following findings:
(1) In finding that at the time of death Larry Stutts, Jr., was within the course and scope of his employment;
(2) In finding Fannie C. Ballard was not a legal dependent of Larry Stutts, Jr., under the provisions of the workmen’s compensation statute;
(3) In finding plaintiff to be the father of Larry and thus entitled to benefits as a surviving parent;
(4) In refusing to grant a continuance to Liberty Mutual;
(5) In overruling the exception of jurisdiction (venue) filed by Liberty Mutual; and
(6) In assessment of attorney’s fees and penalties.
COURSE AND SCOPE OF EMPLOYMENT
In a “Statement of Uncontested Material Facts” filed by Liberty Mutual, it was stated that:
“At the time of death he [Larry Stutts, Jr.] was employed by Davis and Sons Inc. in Grand Bay, Plaquemines Parish, State of Louisiana.”
While admitting employment at the time of death, Liberty Mutual contends that the circumstantial evidence presented was not sufficient to establish that Larry was within the course and scope of such employment at the time of death. There were no eye witnesses to the incident.
Larry and his grandmother, Fannie, moved to Empire, Louisiana, approximately two years prior to his death. They had relatives working in the area. Through the assistance of Louis Waters, a half-brother, Larry obtained employment with Davis & Sons as a pumper on a tank battery located in Grand Bay. His working hours were from 3:00 P.M. until 11:00 P.M. He worked six days per week, with each Friday off. Larry worked at this job for the next two years. The evidence is undisputed that Larry was a regular, dependable worker. Waters, a foreman for Davis & Sons, testified that the tank battery was located on a land-fill in the bay. Larry’s duties were to check and keep in working order the various pieces of operating equipment in the battery. Waters stated that the operating equipment was located on two levels. The upper level had hand rails around the platform and the floor remained free of oil. The lower level, however, contained no hand rails and the flooring was oily and slippery. Waters stated that he had worked on the platforms and had difficulty walking or standing on the slippery surface of the lower level. Larry’s duties required him to traverse the area of the lower level.
On the day in question, Waters saw Larry leaving Fannie’s house at the usual customary time of approximately 1:30 P.M. to go to work. Waters lived across the street from Larry. Larry’s body was discovered four days later floating under a boat dock in the vicinity of the tank battery on which he worked.
Liberty Mutual, in its answer, alleged that Larry’s demise was caused by his own act, by his own provocation of a third person not under the control of the defendant, by his intoxication, by his deliberate failure to protect himself against an accident, or that Larry was an aggressor or took up arms against another party, ending in his demise, all of which was contrary to LSA— R.S. 23:1081. The record is completely void of any evidence that would tend to prove any of these allegations.
Liberty Mutual admits that Larry was employed by Davis & Sons at the time of his death. The evidence is undisputed that Larry was a reliable, dependable employee *1329 in the performance of his duties. There is no hint in the record that his death arose by-virtue of any acts alleged by Liberty Mutual in its answer. There was no indication of any foul play and there is no contention that his death was caused by anything other than by accidental drowning.
This case is strikingly similar to the case of Hocut v. Insurance Company of North America, 254 So.2d 108 (La.App. 3rd Cir. 1971), writ den., 260 La. 411, 256 So.2d 292 (1972).
Briefly, in Hocut, the deceased was a seaman who had been employed on a shrimping vessel. He was staying aboard the vessel while it was in port in Cameron. The day before the vessel was to sail on a fishing expedition, Hocut borrowed some money from the boat’s captain. Hocut was to sleep aboard the vessel that night. He was last seen at 8:00 P.M. that evening in a lounge drinking beer. The next morning the captain found his vessel locked and Ho-cut missing. The body was discovered almost two weeks from Hocut’s disappearance, floating in the water. It was found that Hocut must have fallen into the water upon his return to the vessel. This court concluded that Hocut was within the course and scope of his employment as he was returning to the vessel, as he had done previous nights, to sleep in preparation to set sail the next day.
The facts in the case at hand show that Larry was on duty the day in question and, in some manner, fell into the water from the battery and drowned. The evidence fully supports the trial court’s conclusion that Larry met his death while in the course and scope of his employment.[1] Hocut v. Insurance Company of North America, supra.
WAS FANNIE A DEPENDENT?
Liberty Mutual contends that Larry’s grandmother, Fannie, was a dependent within the provisions of LSA-R.S. 23:1231 and the plaintiff, as a surviving parent, is not entitled to recovery. This statute reads as follows:

“For injury causing death within two years after the accident, there shail be paid to the legal dependent of the employee, actually and wholly dependent upon his earnings for support at the time of the accident and death, a weekly sum as hereinafter provided. If the employee leaves legal dependents only partially actually dependent upon his earnings for support at the time of the accident and death, the weekly compensation to be paid shall be equal to the same proportion of the weekly payments for the benefit of persons wholly dependent as the amount contributed by the employee to such partial dependents in the year prior to his death bears to the earnings of the deceased at the time of the accident.

“However, if the employee leaves no legal dependents, the sum of twenty thousand dollars shall be paid to each surviving parent of the deceased employee, in a lump sum, which shall constitute the sole and exclusive compensation in such cases. ”

Fannie is a seventy-eight-year-old woman who reared Larry beginning when he was two years of age. She took Larry into her home after his parents had separated and his mother had married Ben Reed. She also stated that she had delivered Larry upon his birth and that he was plaintiff’s son. When questioned at trial whether she was dependent upon Larry for her livelihood, she vehemently denied being so. She testified that, after she and Larry moved to Empire, they split the costs of their apartment rent ($150.00 per month), utilities (average $60.00 per month) and the telephone (estimated at $15.00 per month), one-half for herself and one-half for Larry. She further stated that each would purchase their own food as they did not have the same tastes. Her hospitalization, medicine and other medical expenses were paid for by Medicare. Fannie received $208.00 per *1330 month in welfare benefits and she stated that she could eat well and otherwise was able to care for herself on this amount.
Fannie and Larry had a very close relationship; one which was more like mother/son than grandmother/grandson. Fannie would wash Larry’s clothes and he would stay with her when he was off duty. He would also assist her in the household duties. However, the financial relationship in living together is symbiotic rather than one of dependency. When asked whether she (Fannie) was dependent on Larry for anything, she replied: “No way in the world.' Because you don’t ever know when a young persons’ fixing to step out”
On deposition, prior to trial, Fannie, in regard to questions concerning her financial dependency on Larry, responded:

“Q. Did you view yourself as dependent on Larry for anything?

“A. No, I didn’t depend on Larry for nothing because I didn’t figure he would be there very long. I figured he would soon marry and leave or get in with somebody and get a job off to himself.

“Q. ... I was asking you some questions about whether you depended on Larry for any kind of financial support of any kind, did you?

“A. No sir.”

In summary, Fannie had been on welfare for many years. She had managed to rear her two grandsons, Larry and Louis Waters, from the time they were babies. She accomplished this on the welfare payments she received. She furnished these two grandchildren the necessities of life until they were approximately eighteen years old, at which time they both began working. She continued to live with Larry after he began working but she steadfastly maintained her independence. She was steadfast in her position that Larry did not furnish any financial support for her upkeep. There is no evidence to the contrary.
The record fully supports the trial court’s conclusion that Fannie was not dependent on Larry at the time of his death.
PROOF OF PATERNITY
Liberty Mutual contends that plaintiff did not prove that he was the actual father of Larry; therefore, he is not entitled to collect the death benefits due to a surviving parent as provided by LSA-R.S. 23:1231. This argument has no merit. The record and undisputed testimony of all the witnesses clearly identifies plaintiff as the father and Susie Reed as the mother of Larry Stutts, Jr. Fannie Ballard stated that her daughter married plaintiff and that she delivered Larry when he was born. Plaintiff stated that the decedent was his child. Louis Waters, a half-brother of Larry, stated that plaintiff was the father of Larry. There is no proof to the contrary. Plaintiff and Susie lived together prior to and after the birth of Larry. We conclude that plaintiff was the father of Larry and is entitled to recover death benefits.
MOTION FOR CONTINUANCE
 Liberty Mutual contends the trial court erred in not granting its motion for continuance. The record indicates that the motion for continuance was based upon the contention that Liberty Mutual needed more time to subpoena certain records of a savings account jointly held by Fannie and Larry which Liberty Mutual thought would show dependency. The trial court denied the motion but held the case open to allow the bank records to be introduced into evidence along with a deposition of the bank officer. The ruling of the trial judge was proper; it was not an abuse of his broad discretion. See, Harrison v. South Central Bell Tel. Co., 390 So.2d 219, 222 (La.App. 3rd Cir. 1980), writ denied, 396 So.2d 900 (La.1981).
As to the savings account of Larry and Fannie, she explained this both in her deposition and at trial. She stated that none of the money in the account belonged to her. She was listed on the account so that she could make deposits and withdrawals for Larry’s benefit. The withdrawals were not for her own purposes but to pay Larry’s truck notes and insurance premiums whenever his work schedule prevented him from doing so.
*1331 Fannie stated that after Larry’s death she contacted an attorney and closed out the account receiving the balance of $3,548.52. She stated that she intended to buy a tombstone for Larry’s grave with the money. The fact that she withdrew the savings after the death of Larry does not establish dependency during the time Larry lived with her.
JURISDICTION (VENUE)
Liberty Mutual further alleges that the trial court lacked jurisdiction of the matter because plaintiff was a resident of Sabine Parish, the Eleventh Judicial District, and not Natchitoches Parish, the Tenth Judicial District. We are not faced with a lack of subject matter jurisdiction as the district court is the proper forum to hear and decide this workmen’s compensation claim, but rather Liberty Mutual’s position raises a question of venue.
It is well established that venue is waiva-ble. The plaintiff, a resident of Sabine Parish, instituted this suit in Natchitoches Parish. LSA-C.C.P. art. 925 provides that all objections to venue are raised by the declinatory exception which shall be filed before the answer. LSA-C.C.P. 928. The defendant answered the petition without objecting to venue. Clearly, venue was waived. The trial court correctly overruled the exception.
PENALTIES AND ATTORNEY’S FEES
The last assignment of error alleged by Liberty Mutual is that the trial court erred in awarding penalties and attorney’s fees.
We find the action by Liberty Mutual to be arbitrary, capricious or without probable cause. Ms. Mary Jo Zichichi, Claims Adjuster for Liberty Mutual, stated that she talked to Fannie Ballard and other relatives around May 1981, concerning the dependency of Fannie. She received the demand letter from plaintiff on May 21,1981, claiming the surviving parent’s death benefit. Ms. Zichichi stated that she felt that Fannie was dependent even though she denied it. Fannie denied dependency in the telephone interview with Ms. Zichichi, on deposition and at trial. Ms. Zichichi gave no facts upon which she reached such a conclusion.
This suit was filed July 28, 1981, more than sixty days after the demand by plaintiff. No tender by Liberty Mutual to either Fannie or plaintiff was made prior to trial. The record discloses no probable cause for this failure to tender payment of benefits due to plaintiff, therefore, Liberty Mutual is liable for penalties and attorney’s fees.
Plaintiff’s attorney answered this appeal seeking an increase in attorney’s fees due to the appeal. We will award an additional $500.00 as attorney’s fees for this appeal. The trial court judgment will be amended accordingly.
For the foregoing reasons, the judgment of the trial court in favor of plaintiff, Larry Stutts, Sr., is amended by awarding $500.00 as additional attorney’s fees. In all other respects the judgment of the trial court is affirmed. All costs are assessed against defendant-appellant, Liberty Mutual Insurance Company.
AMENDED AND AFFIRMED.

. In view of the evidence we have discussed, it is unnecessary for us to consider the admissibility of the accident reports received by Liberty Mutual from Davis & Sons and introduced into evidence.