414 So.2d 1379 (1982)
Jeannine Elizabeth Tobin HAMITER, Plaintiff-Appellee,
v.
James Jewell HAMITER, Defendant-Appellant.
James Jewell HAMITER, Plaintiff-Appellant,
v.
Jeannine Elizabeth Tobin HAMITER, Defendant-Appellee.
Nos. 14938, 14939.
Court of Appeal of Louisiana, Second Circuit.
May 10, 1982.
James E. Franklin, Jr., Shreveport, for plaintiff/defendant-appellee.
Hargrove, Guyton, Ramey & Barlow by Billy R. Pesnell, and Joseph L. Shea, Jr., Shreveport, for defendant/plaintiff-appellant.
Before HALL, MARVIN and NORRIS, JJ.
NORRIS, Judge.
Appellee, Jeannine Elizabeth Tobin Hamiter, has moved to dismiss this appeal in two consolidated cases on the grounds that the appeal was not timely taken.
This suit for divorce was tried on September 25, 1981, September 29, 1981, October 1, 1981, and October 7, 1981. In oral reasons for judgment given on October 7, 1981, immediately after the termination of argument, the court granted a divorce between the parties and made certain awards relative to alimony pendente lite and permanent alimony, and issued a permanent injunction relating to the community property. Thereafter, a judgment was signed on November 10, 1981, but was not filed until November 17, 1981. The record does not reflect that a motion for new trial was filed in this matter. It is also devoid of any notice of judgment to counsel for either party.
On December 22, 1981, appellant filed a motion for a devolutive appeal relative to those portions of the judgment regarding alimony pendente lite, permanent alimony, the injunctive relief granted, and the court costs, which was granted on the same date by the trial court.
Appellee asserts in her motion to dismiss the appeal that some forty-two days elapsed from the date of the signing of the judgment to the signing of the order of appeal *1380 thereby making this appeal untimely. Looking solely at the face of the record and applying the provisions of Louisiana Code of Civil Procedure Articles 1974, 3942, and 3943,[1] it would appear that appellee's position might have merit. However, a closer examination of the record, particularly the actual judgment signed on November 10, 1981; the oral reasons for judgment; and Exhibit "P-30," an interim agreement referred to by the trial court, leads us to conclude that the trial court took this matter under "advisement" thereby making applicable the requirement of La.Code of Civil Procedure Article 1913[2] that notice of judgment be sent when a case has been taken under advisement. Because the record does not reflect that the notice which is required under these circumstances was sent, the appeal delays had not begun to run prior to the granting of the order of appeal. Therefore, we conclude the appeal is timely.
The oral reasons for judgment were given immediately after the termination of the argument. In pertinent part, they provided as follows:
... As to the amount of alimony pendente lite, the Court feels it should be awarded, we find should be $2200 per month and we so award.
* * * * * *
... that he should maintain as permanent alimony the sum of $1700 per month. However, if Mrs. Hamiter is to remain in the dwelling, he should receive credit of $650 per month accordingly.
He will receive credit for the amount of support that's been provided pursuant to the interim agreement.[3] The injunction *1381 will continue in effect. The alimony pendente lite is from date of judicial demand, (emphasis added.)
Comparing the oral reasons for judgment with the written judgment ultimately signed by the trial court, it is obvious that there are discrepancies between the two in several areas.
In particular, that portion of the written judgment regarding alimony pendente lite refers to the payment of car insurance on the cars used by appellee and her daughter and two-thirds of the sum paid on the hospitalization policy, which is not mentioned in these specific terms in the interim agreement referred to by the trial court in its reasons, and provides as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of JEANNINE ELIZABETH TOBIN HAMITER and against JAMES JEWELL HAMITER, ordering and condemning JAMES JEWELL HAMITER to pay to JEANNINE ELIZABETH TOBIN HAMITER the sum of TWO THOUSAND TWO HUNDRED AND NO/100 ($2,200.00) DOLLARS per month as alimony pendente lite, to commence from date of judicial demand, on April 2, 1980; provided, however, that JAMES JEWELL HAMITER shall receive credit for sums paid to JEANNINE ELIZABETH TOBIN HAMITER since the filing of these suits and for sums paid on her behalf for the house note, house insurance, taxes on house, car insurance on cars used by JEANNINE ELIZABETH TOBIN HAMITER and her daughter, and 2/3 of the sum paid on the hospitalization insurance policy.
Additionally, the following portion of the written judgment pertaining to the payment of permanent alimony provides for the method and time of payment of this alimony and specifies the credit which appellant is to receive should appellee continue to reside in the family home. These issues are also not specifically addressed by the trial court in its oral reasons for judgment. The written judgment provides:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of JEANNINE ELIZABETH TOBIN HAMITER and against JAMES JEWELL HAMITER, granting and awarding unto JEANNINE ELIZABETH TOBIN HAMITER alimony after divorce in the amount of ONE THOUSAND SEVEN HUNDRED AND NO/100 ($1,700.00) DOLLARS per month, said sum to commence on the 15th day of October, 1981, and to be payable as follows: Payable in one lump sum on October 15, 1981, and a like amount on the 15th day of each following and successive month thereafter provided, however, that should JEANNINE ELIZABETH TOBIN HAMITER occupy the dwelling located at 659 Slattery Boulevard, Shreveport, Louisiana that JAMES JEWELL HAMITER shall receive a credit against the $1,700.00 per month in the amount of SIX HUNDRED FIFTY AND NO/100 ($650.00) DOLLARS per month, said credit to be received only in the event that JAMES JEWELL HAMITER continues paying the insurance, house note and taxes for said residence.
Finally, the written judgment provides that appellant pay all costs of this proceeding. Costs are not mentioned in the oral reasons for judgment.
Therefore, under these circumstances we can only conclude that the trial court took this matter under advisement prior to his signing the judgment in that he took additional time to consider all of his ruling at some point subsequent to the rendering of his oral reasons for judgment and *1382 prior to the signing of the judgment on November 10, 1981. See Margan v. Precision Motors, Inc., 317 So.2d 664 (La.App. 4th Cir. 1975); Green v. Taca International Airlines, 284 So.2d 339 (La.App. 4th Cir. 1973), reversed on other grounds, 304 So.2d 357 (La.1974); Campton v. Crown Zellerbach Corp., 246 So.2d 397 (La.App. 1st Cir. 1971). Therefore, La.Code of Civil Procedure Article 1913 mandates that notice of the signing of the judgment be mailed by the clerk of court to counsel of record for each party. In the absence of such notice, neither the delay for applying for a new trial nor the time for taking the appeal begins to run. Applying this law to the instant case, we conclude that the time for taking the appeal had not begun to run on December 22, 1981, when the appeal was taken. Therefore, the appeal being timely taken, we deny the motion to dismiss.
Appellant additionally asserts by way of argument that the ruling of this court in Haskins Trucking, Inc. v. United States Fidelity and Guaranty Co., 406 So.2d 686 (La. App. 2d Cir. 1981) is incorrect and that the delays for applying for a new trial and for appellate purposes should not commence until the judgment is filed. Because of our conclusion that the appeal delays in this case had not commenced to run, we pretermit any discussion of this issue as unnecessary to the resolution of this case.
Accordingly, the motion to dismiss is denied.
HALL, J., concurs and assigns written reasons.
HALL, Judge, concurring.
I agree with the majority opinion that the timeliness of this appeal can be sustained for the reason that the case was taken under advisement, notice of judgment was required, and the delay for appealing had not commenced to run when the appeal was taken because notice of judgment had not been given.
In my opinion, the timeliness of the appeal can also be sustained for the reason that the delay for applying for a new trial did not commence to run until the judgment was filed in the record of the suit, and the appeal was taken within 30 days after the expiration of the new trial delay. LSA-C.C.P. Arts. 3942, 3943, 2087, and 1974. We should overrule the decision of a panel of this court in Haskins Trucking, Inc. v. United States Fidelity and Guaranty Co., 406 So.2d 686 (La.App. 2d Cir. 1981) which held, following the strict letter of LSA-C. C.P. Art. 1974, that the delay for applying for a new trial commences to run from the date of signing of the judgment even if it is not filed in the record until later.
The Haskins decision is erroneous and patently unfair and prejudicial to the litigant against whom a judgment is rendered. The holding runs counter to the strong policies favoring appeals and according liberal construction to procedural laws so as to prevent injustice and allow litigants their day in court. See Nomey v. State, Department of Highways, 325 So.2d 732 (La.App. 2d Cir. 1976); LSA-C.C.P. Art. 5051. Under Haskins the delays for moving for a new trial and taking an appeal are allowed to commence from the date a judgment is signed even though the judgment is not filed in the record and may be laying on the judge's or his secretary's desk or may be in opposing counsel's briefcase, leaving the appellant totally unaware that it has been signed.
The problem arises from the amendment to Article 1911 of the Code of Civil Procedure allowing judgments to be signed in chambers. Prior to the amendment, when judgments had to be signed in open court, there was no problem because the signing of the judgment was done in open court, was immediately reflected in the minutes of the court, and the signed judgment was immediately filed with the clerk. Now, since judgments can be signed by the judge in chambers there can be, and was in this case and in the Haskins case, a substantial delay between the date of signing and the date the judgment is filed with the clerk and becomes a part of the record in the suit.
It seems entirely contrary to every precept of procedural law to allow a critical delay to begin running from the date something is done outside of court and outside of *1383 the record in the case. The holding in this case should be that the delay for applying for a new trial begins to run from the signing of the judgment, but no earlier than the date the judgment is filed.
There are some analogous situations in the jurisprudence. It has been held that for purposes of considering whether a suit has been abandoned for failure to prosecute, any step in the prosecution of the case must be a formal action in court and must appear in the record of the proceedings. See Melancon v. Continental Casualty Company, 307 So.2d 308 (La.1975). Code of Civil Procedure Article 253 requires that all pleadings or documents to be filed in an action pending in a court shall be delivered to the clerk of the court for such purpose. Many cases hold that a pleading or document, which would include a judgment, is not filed until it is delivered to the clerk. There are cases that hold that delivery of a pleading to a judge does not amount to a filing with the clerk. See Johnson v. State Farm Mutual Automobile Insurance Co., 241 So.2d 799 (La.App. 3d Cir. 1970).
Block v. Fitts, 259 La. 555, 250 So.2d 738 (1971) is precisely analogous to the instant case. The issue there was whether a motion for a jury trial was timely filed. The Code provides that a demand for a trial by jury must be filed not later than 10 days after the service of the last pleading. The Code also provides that service may be mailed and that service is complete upon mailing. In that case the last pleading was served, that is, mailed, on September 4. The pleading was filed with the clerk on September 8. The motion for a jury trial was filed more than 10 days after September 4 and less than 10 days after September 8. Under the precise language of the Code the motion was not timely because the delay had run. The moving party contended that the document mailed was not a pleading and became one only after it was filed. Hence, it was argued that the 10-day delay did not begin to run until the official filing on September 8.
The Supreme Court held that the mover's contention was well founded. The court held:
"... The document mailed in the present case became an official pleading only when it was actually filed with the Clerk of Court. See LSA-C.C.P. Art. 253
....
"We hold that when service of the last pleading is by mail and the document is mailed before it is filed with the Clerk of Court, the delay for demanding a jury trial begins to run no earlier than the date of filing. Hence, the demand for a jury trial in the present case was timely."
The delay for applying for a new trial should begin to run no earlier than the date the judgment is filed. Until it is filed it has no existence as a document or pleading in the case. Could the appellant apply for a new trial or take an appeal before the judgment is filed? Surely not. Appeals are routinely dismissed as premature where there is no signed judgment filed in the record. See Robinson v. Sisters of Charity of the Incarnate Word, 270 So.2d 608 (La. App. 2d Cir. 1972); Dillon v. State, 322 So.2d 351 (La.App. 2d Cir. 1975); McElwee v. McElwee, 244 So.2d 36 (La.App. 2d Cir. 1971). Doesn't it follow that the delay for applying for a new trial or taking an appeal should not commence until the judgment is filed?
It is no answer to say that the legislature created a hiatus in the law by amending the Code to allow judgments to be signed in chambers and that we must follow the strict letter of the Code. Ordinarily when we find such a hiatus which may result in prejudice to a party, particularly on a procedural rule, we simply give the statute a reasonable interpretation that makes sense and protects the parties.
Neither is it an answer to say that the appellant could have protected himself by requesting notice of judgment. The notice of judgment provisions are designed as an optional method for counsel to determine when a judgment has been signed and filed but are not designed to change basic procedural law that a document in a judicial proceeding must be filed in order to have effect.
A lawyer for a party to a lawsuit ought to be able to look at the official record of *1384 the court, that is, the record or the minutes, and determine the status of the suit. The party's rights should not be affected by anything dehors the record.
I would take this opportunity to judicially overrule Haskins, but since the majority prefers to sustain the appeal on other grounds, I take this opportunity to point out the problem created by Haskins with the hope that the legislature will, as suggested in Haskins, amend Article 1974 to provide that the delay for applying for a new trial, and consequently, for taking an appeal, shall commence from the date a judgment is signed and filed.
NOTES
[1] La.Code of Civil Procedure Article 1974 provides:

The delay for applying for a new trial shall be seven days, exclusive of legal holidays. Except as otherwise provided in the second paragraph hereof, this delay commences to run on the day after the judgment was signed.
When notice of the judgment is required under Article 1913, the delay for applying for a new trial commences to run on the day after the clerk has mailed, or the sheriff has served, the notice of judgment as required by Article 1913.
La.Code of Civil Procedure Article 3942 provides:
An appeal from a judgment granting or refusing an annulment of marriage, a separation from bed and board, or a divorce can be taken only within thirty days from the applicable date provided in Article 2087(1)-(3).
Such an appeal shall suspend the execution of the judgment in so far as the judgment relates to the annulment, separation, or divorce.
La.Code of Civil Procedure Article 3943 provides:
An appeal from a judgment awarding custody of a person or alimony can be taken only within the delay provided in Article 3942. Such an appeal shall not suspend the execution of the judgment in so far as the judgment relates to custody or alimony.
[2] La.Code of Civil Procedure Article 1913 provides:

Notice of the signing of a default judgment against a defendant on whom citation was not served personally, and who filed no exceptions or answer, shall be served on the defendant by the sheriff, by either personal or domiciliary service.
Except as otherwise provided by Article 3307, when a case has been taken under advisement by the court, notice of the signing of a final judgment therein shall be mailed by the clerk of court of the parish where the case was tried to the counsel of record for each party, and to each party not represented by counsel.
If, at the conclusion of a trial a case is not taken under advisement but the court does not sign a judgment at the time, a party may make a request of record for notice of the date when the judgment was signed; and when such a request is made, the clerk shall mail such notice to the party requesting it or to his counsel of record.
The clerk shall file a certificate in the record showing the date on which, and the counsel and parties to whom, notice of the signing of the judgment was mailed.
Except as otherwise provided in the first three paragraphs of this article, notice of the signing of a final judgment is not required.
[3] The interim agreement referred to by the trial court and filed in evidence as "P-30" reads as follows:

I hereby agree to pay unto you the sum of $250.00 per week, said sum to be paid on Friday of each week, beginning Friday, April 18, 1980. I further agree to pay the mortgage note, the homeowner's insurance premiums, and the ad valorem taxes on the house at 659 Slattery Boulevard, and to maintain you under the present hospitalization and major medical insurance policy covering you. It is understood and agreed that payment under this letter agreement shall be made only until such time as alimony pendente lite or permanent alimony is set by the court.
The terms of this agreement shall not be revealed to the court; however, in the event that a judgment of alimony pendente lite is made retroactive from the date of judgment, I will be given credit for any and all monies paid to you subsequent to the effective date of the alimony pendente lite judgment, including but not limited to, any cash payments made to you, and any payments made on your behalf such as the mortgage note, insurance premiums, ad valorem taxes and the like.