438 So.2d 658 (1983)
Johnny Ray GILCREASE, Plaintiff-Appellee,
v.
Rhonda McDonald GILCREASE, Defendant-Appellant.
No. 15592-CA.
Court of Appeal of Louisiana, Second Circuit.
September 20, 1983.
Rehearing Denied October 20, 1983.
Writ Denied November 28, 1983.
*659 Love, Rigby, Dehan, Love & McDaniel by Samuel P. Love, Jr., Shreveport, for plaintiff-appellee.
Nelson, Hammons & Johnson by Brian D. Smith, Shreveport, for defendant-appellant.
Before HALL, JASPER E. JONES and NORRIS, JJ.
NORRIS, Judge.
Rhonda McDonald Gilcrease appeals a judgment of the trial court awarding custody of her two minor daughters, the younger a child of the marriage and the older born of another union, to her former husband, Johnny Ray Gilcrease.

JURISDICTIONAL ISSUE
Upon our reading of this record, we noted that the parties stipulated that the motion for new trial filed herein was timely, obviously because they recognized that the timeliness of the filing of the motion for new trial insofar as it affected the timeliness of this appeal presented a potentially serious issue. Because it is necessary that we recognize our lack of jurisdiction on our own motion even when not raised by the parties, we are required to consider this issue. The parties to an appeal may not waive the jurisdictional requirement that an appeal be taken timely. La.C.C.P. Art. 2162; Peters v. Barry Manufacturing Co., 385 So.2d 1263 (La.App. 4th Cir.1980). Nor can a trial court or an appellate court waive this requirement. La.C.C.P. Art. 2162; Ardoin v. Dupree, 416 So.2d 648 (La.App. 3d Cir.1982); Anderson v. City of Baton Rouge, 381 So.2d 842 (La.App. 1st Cir.1980); Baldo v. Thibodeaux, 295 So.2d 866 (La. App. 4th Cir.1974). Thus, simply stipulating as to the timeliness of the filing of the motion for new trial was of no effect. However, because appeals are favored, we have closely scrutinized this record to determine if there is a legal basis upon which we can maintain the appeal.
At the close of argument, the trial court awarded custody of both children to Mr. Gilcrease and immediately thereafter stated:
Visitation rights Counsel should attempt to work out, and if unable to do so, the Court will set same.
Obviously and significantly, the trial judge left the matter open in order to allow the parties to work out Mrs. Gilcrease's visitation privileges. Reasonable visitation rights were granted to Mrs. Gilcrease in the signed judgment; therefore, it is apparent that the matter was resolved subsequent to the rendition of the judgment. Under these circumstances, we can only conclude that the trial court took the matter under advisement. Thus, the delay for appealing did not commence until the mailing of the notice of the signing of the judgment. La. C.C.P. Arts. 1913; 1974; Schlegel v. Schlegel, 367 So.2d 904 (La.App. 4th Cir.1979). See also and compare Hamiter v. Hamiter, 414 So.2d 1379 (La.App. 2d Cir.1982) and cases cited therein. Accordingly, the delays for applying for a new trial did not begin to run until the clerk mailed the notice of judgment to each party, and Mrs. Gilcrease's motion for new trial filed prior to the actual mailing thereof was timely and served to interrupt the appellate delays until the motion for new trial was actually ruled upon. Therefore, the order of appeal was filed within the applicable delay period for perfecting this appeal.

ON THE MERITS
On June 17, 1982, Johnny Ray Gilcrease filed a petition for divorce in which he requested custody of the minor child born of the parties' marriage [Rhiannon, age 3] and of a minor child born to Mrs. Gilcrease prior to her marriage of whom he is not the biological father [Felyscha, age 7]. Mrs. Gilcrease was personally served with the petition and a rule to show cause why Mr. Gilcrease should not be awarded the care, custody and control of Rhiannon. Felyscha *660 was not included in the rule because the judge who signed the order declined to include her since Mr. Gilcrease was not her parent. Obviously relying on the scope of the custody rule, Mrs. Gilcrease answered the petition and reconvened seeking custody only of Rhiannon and support for her.
On July 13, 1982, only the divorce issue was tried after which judgment was rendered granting Mr. Gilcrease a divorce on the grounds of adultery; the custody and support rules were continued until July 20, 1982. The judgment of divorce was signed July 19, 1982.
Trial of the custody issue commenced on July 20, 1982; the taking of evidence was concluded July 22, 1982. Prior to the custody trial, a pre-trial conference was held at which it was agreed among the parties and the judge that Rhiannon would be the only child whose custody was at issue at the hearing. Felyscha's custody was not to be at issue. This agreement was in keeping with the posture of the custody dispute as it was initially limited by the original rule to show cause.
The main thrust of the evidence presented on behalf of Mr. Gilcrease at this hearing was to show Mrs. Gilcrease's moral unfitness, her failure to adequately care for the children and her poor housekeeping habits. While the twenty-six year old Mrs. Gilcrease admitted to illicit relations with five different men since the parties' physical separation in February, 1981, and to conducting much of this type of activity in her apartment where she lived with her children, she denied the children's ever having witnessed such activity or their being adversely affected by it. In January, 1982, she met her fifth lover, eighteen year old Art Belcher, and three weeks later he moved in with her. They lived together until after this suit was filed when they ceased the practice upon the advice of Mrs. Gilcrease's attorney. Prior to the custody trial but before the judgment granting the divorce was actually signed, Mrs. Gilcrease and Mr. Belcher participated in a marriage ceremony.
There is some evidence contained within the record which tends to corroborate Mr. Gilcrease's contention that Mrs. Gilcrease was a poor housekeeper. However, there is no direct evidence in the record that any of the conduct of which Mr. Gilcrease complains had an adverse effect on the children. For the most part, the witnesses for both parties were members of their respective families. Mrs. Gilcrease's witnesses all testified that she loved and properly cared for her children and that she was an adequate housekeeper.
At the conclusion of the testimony, contrary to the pre-trial understanding, and to the surprise as well as over the strenuous objection of Mrs. Gilcrease's counsel, the trial court on its own motion decided that he would consider the custody of both children to be at issue. This turn of events is reflected by the following colloquy:
MR. CARY:[1] I want to object to the Court's ruling from the standpoint that we don't record our pretrial conferences here as we do in federal court, but it was agreedmy recollection of that pretrialwas agreed that the only child we're talking about is Rhiannon. That's the only child that's in the order. And when we first opened testimony, in order to protect myself in an enlargement of the pleadings by testimony, I objected. And the Court said that whenever we say "children", we mean "child".
THE COURT: That's correct.
MR. CARY: I haven't had an opportunity to read any of them. As I appreciate your ruling, unless I can convince you otherwise you are treating this evidence as pertaining to a request for custody for both children.
THE COURT: Both Children. And like I said, I apologize. You're absolutely correct. I did inform you that it would be limited to Rhiannon and not to Felyscha. And I did so out of complete ignorance *661 as to what the state of the evidence would be. The defendant would be entitled to adequate time to prepare to contest it.
MR. CARY: Will the Court state for the record that in that pretrial I filed with the Court way in advance of this hearing, that the Court's had before it in the hearing, states that Felyscha is not at issue and not a child of the marriage?
THE COURT: That is correct. Any objection to that Mr. Love?
MR. LOVE: No sir.

* * * * * *
Argument was heard on August 2, 1982 after which the court in oral reasons rendered judgment granting custody of both children to Mr. Gilcrease stating in part as follows:
* * * * * *
Counsel for Mr. Gilcrease says there are two basic grounds the Court should consider to award custody of the children to his client. Not only do you have the open and notorious adulterous relationshipand it was open and it was known to the worldbut you also have the fact that she was not a good homemaker. This is a matter which is seriously disputed by Ms. Gilcrease, but we noted with interest that even her parents did not unequivocally say she was an outstanding homemaker, but their testimony was couched in terms that for a working mother, she did well.
* * * * * *
There is no doubt in this Court's mind that both parties love these children. We do find that Mr. Gilcrease has provided and cared for the children very well. They refer to him as Dad.
From the testimony we have heard, we do find that these two young girls are very close and should not be separated. We find, as argued by Counsel for Ms. Gilcrease, that other [than] discussions on the part of Ms. Gilcrease with female friends and what appeared to be embarrassing conduct in public at parties, there was little additional substantial evidence of adultery, except what came from her own admission, but the admission acknowledges that when she met Art Belcher in December of 1981, that he was allowed to move into her apartment in January, 1982, and that he remained there until they were instructed by counsel that it would be wise that he move out, which he did. There is conflict as to whether he subsequently returned to live at the apartmentexcuse meat Janet Place thereafter, but we do find that the relationship continued.
As argued by counsel for Ms. Gilcrease, as to whether she had sufficiently redeemed and/or purged herself of past sins by her marriage to Mr. Belcher when given the opportunity to do so, although the judgment had not been signed, by virtue of the fact that it was in May of 1982, that the two took positive steps in that direction, we find that to be the case, that positive steps had been taken by the two to cement their relationship. But that was only the purchasing of rings, but with the tender age of Mr. Belcher, being eighteen and the lack of a stable employment, we find that he was in a large measure living with and off Ms. Gilcrease during the period of time he resided with her.
* * * * * *
We have read a wail [sic] of a lot of cases, and counsel have outlined them to this Court, and what we have to determine is: What is in the best interest of the children? These are young girls, and young girls by right should be with their mother, but has she, by her conduct, forfeited that right? Can it be said that the future would be different than the past, and the mere fact that rings were placed on lay-away in May by money put up by her, we cannot so find.
We do find that the limitations are clearly there if Mr. Gilcrease would be a proper person to rear his child. Yet, at the same time, having found the conduct that rises to the level of unfitness on the part of the mother as relates to the child of that marriage, it can spill over as *662 relates to the oldest child as well, and we feel that Mr. Gilcrease should be awarded custody of both children, and that will be the judgment of the Court accordingly.
Mrs. Gilcrease appeals specifying the following errors:
I. The trial judge erred in denying custody to Appellant on the basis of prior sexual misconduct when Appellee failed to carry his burden of proving a detrimental effect of such conduct on the children.
II. The trial judge erred in failing to apply the "reformation" rule to award custody to Appellant due to Appellant's reformation from any previous course of misconduct.
III. The trial judge erred in failing to properly consider the "stability of environment" factor which weighed heavily in favor of Appellant who had been responsible for raising the children from birth and who had had physical custody of the children since physical separation of the parties.
IV. The trial judge erred in failing to properly consider the impact of Appellee's work-related frequent and extended absences from home which, as noted by the trial judge in his ruling, made an award of custody to Appellee tantamount to an award of custody to Appellee's mother.
V. The trial judge erred in awarding the custody of Emilly Felyscha McDonald to Appellee when her custody was not properly at issue.
VI. The trial judge erred in awarding the custody of Emilly Felyscha McDonald to a non-parent (Appellee) when Appellee failed to carry his burden of proving a forfeiture of parental rights by Appellant.
VII. The trial judge erred in applying the best interest test in a custody contest between a parent (Appellant) and non-parent (Appellee) of Emilly Felyscha McDonald.
VIII. The trial judge erred in placing undue weight on evidence unfavorable to Appellant, while not considering those factors which supported an award of custody to Appellant.
Finding merit in Assignments VVII, we pretermit discussion of the remaining assignments of error, reverse and remand for a new trial.
La.C.C.P. Art. 1551[2] outlines pre-trial conference procedure in Louisiana. The theory inherent in pre-trial procedure is to avoid surprise and to allow orderly disposition of the case. The pre-trial order, or as in this case the pre-trial agreement, controls the subsequent course of the action but can be modified at trial to prevent substantial injustice. La.C.C.P. Art. 1551; Austrum v. City of Baton Rouge, 282 So.2d 434 (La.1973).
While we recognize that in such matters, the trial court is vested with discretion [Naylor v. La. Department of Public Highways, 423 So.2d 674 (La.App. 1st Cir. *663 1982); Lawless v. Employers Mutual Fire Insurance Co., 263 So.2d 79 (La.App. 1st Cir.1972)], that discretion is necessarily controlled by the principle that it must be exercised to prevent substantial injustice to the parties who have relied on the pre-trial rulings or agreements and structured the preparation and presentation of their cases accordingly. Under the circumstances presented herein, the major modification of the pre-trial agreement at the end of the testimony so altered the character of the trial that it prejudiced Mrs. Gilcrease's case to the point that rather than preventing, it caused substantial injustice. Thus, while done in good faith, this action constituted a clear abuse of the trial court's discretion.
In view of the fact that appellate courts have the right to "render any judgment which is just, legal and proper upon the record on appeal" as provided for by La.C.C.P. Art. 2164, we are of the opinion that the right, proper and most equitable thing to do in this matter is to remand this case to the district court for the purpose of a new trial which will permit all of the parties involved herein the right to introduce any and all relevant evidence that they may have concerning the issue of the custody of both children. See Maurer v. Caballero, 278 So.2d 880 (La.App. 1st Cir. 1973). Because Mr. Gilcrease did request custody of both children in his petition, both parties should have been afforded and are entitled to the opportunity to fully litigate the question of custody of both of these children in light of all the applicable legal principles enunciated in the cases involving custody disputes between parents as well as those between parents and non-parents. See Wood v. Beard, 290 So.2d 675 (La.1974); Hall v. Hall, 367 So.2d 162 (La.App. 2d Cir.1979). After our thorough review of the record, we conclude that the very serious issue of the custody of Felyscha, because of the trial court's belated ruling, was necessarily decided on the basis of a limited amount of evidence. The trial court made it clear that Felyscha's custody was closely interrelated with any award of custody made of Rhiannon and vice versa. While this was a proper factor to consider because of the legal holdings that the separation of children should be avoided whenever possible [Tiffee v. Tiffee, 254 La. 381, 223 So.2d 840 (1969)], this factor should have been considered at the point when the issues were determined prior to the hearing rather than only from the close of the evidence. To lead Mrs. Gilcrease to believe that Felyscha's custody was not at issue prior to trial and through the taking of evidence surely affected the entire approach to and the presentation of the case. One of the factors which may well have been relied on was the family solidarity doctrine, which under those circumstances, would have weighed in favor of Mrs. Gilcrease's obtaining custody of Rhiannon.
The objective of our legal system is to render justice between the litigants upon the merits of the controversy rather than to defeat justice upon the basis of technicalities. See Succession of Robinson, 186 La. 389, 172 So. 429 (1936); Harrison v. South Central Bell Telephone Co., 390 So.2d 219 (La.App. 3d Cir.1980). We feel that this is particularly compelling in cases involving the future well being and placement of young children. Thus, it is our considered opinion that the ends of justice and the best interests of these minor children will be served by a remand.
The issues which we deem to be relevant at a future trial should include but not be limited to the principles relating to the effect of family solidarity versus separating siblings and those principles involved in custody disputes not only between parents but those between parents and non-parents.
Accordingly, for the foregoing reasons, the judgment of the trial court is reversed and the case is remanded to the district court for further proceedings consistent with this opinion. Costs of this appeal are cast against appellee.
JUDGMENT REVERSED AND RENDERED.
NOTES
[1] Mr. Cary was counsel for Mrs. Gilcrease at trial; however, he is not her counsel for purposes of this appeal.
[2] La.C.C.P. Art. 1551 provides:

In any civil action in a district court the court may in its discretion direct the attorneys for the parties to appear before it for a conference to consider:
(1) The simplification of the issues;
(2) The necessity or desirability of amendments to the pleadings;
(3) What material facts and issues exist without substantial controversy, and what material facts and issues are actually and in good faith controverted;
(4) The possibility of obtaining admissions of fact and of documents which will avoid unnecessary proof;
(5) The limitation of the number of expert witnesses; or
(6) Such other matters as may aid in the disposition of the action.
The court shall render an order which recites the action taken at the conference, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreements of counsel. Such order controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice.