631 So.2d 637 (1994)
Herman BIDSTRUP, et al., Plaintiffs-Appellants,
v.
Sue Soileau BRIGNAC, Defendant-Appellee.
No. 93-537.
Court of Appeal of Louisiana, Third Circuit.
February 2, 1994.
*638 Patterson F. Willis Jr., Opelousas, for Herman Bidstrup et al.
Steven Gerald Durio, Lafayette, for Sue Soileau Brignac.
William Tracy Barstow, Opelousas, for third-party Dallas Leger.
Before LABORDE, THIBODEAUX and DECUIR, JJ.
THIBODEAUX, Judge.
This is a petitory action brought by petitioners to be declared the owners of certain property near the town of Washington in the parish of St. Landry. The trial judge awarded judgment in favor of the defendant, and petitioners have appealed.
Petitioners are the legal heirs of Herman Larson Bidstrup and Christina Hanson Bidstrup. They claim that Citizen's Bank of Louisiana foreclosed on the property known as Mt. Pleasant Plantation and acquired the property by sheriff's deed on April 11, 1890. The Bidstrup heirs further claim that following the purchase by the Bank at the sheriff's *639 sale, the Bank sold the property to Herman Larson Bidstrup, petitioner's ancestor in title, on November 19, 1890. On February 23, 1891, Herman Larson Bidstrup then granted, a "right of way" to Morgan's Louisiana-Texas Railroad & Steamship Company (Morgan's). The "right of way" was comprised of 15.93 acres described in detail below:
Beginning at Station "O" thence under right angle to left Fifty feet point; thence at Fifty feet parallel with centre line to point Fifty feet distant from Station 20 + 15, thence at Ten feet to point Sixty feet distant from Station 20 + 15 thence at Sixty Feet distant from Station "Twenty three"; thence at Fifty five feet point one hundred and fifteen feet distant from Station "Twenty three"; thence at One hundred and fifteen feet distance from and parallel with centreline to intersection with North line of Carriere Street, thence Westerly with said street line of Carriere Street to a point on said street line distant Three hundred and thirty seven & ½ feet from intersection of said street line with a centreline measuring along said street line, thence North Eastwardly and parallel with Church Street at Seven hundred and twelve 8/100 feet to intersection with North line of Sittee Street, thence South Eastwardly with said Sittee Street line to a point Forty feet distant from and measuring under right angles to said centreline, Thence at Forty feet distance from and parallel to centreline to intersection with centreline of Water Street, thence Northwestwardly along said centreline of Water Street to intersection with east line of Church Street, thence along said east line of Church Street and extension thereof to center of Bayou Courtebleau, thence Eastwardly under right angles to across centreline of mainline to a point fifty feet distant from Station 45 + 45, thence parallel with and at Fifty feet distant from centreline to a point Fifty feet distant from Station 35 + 44, thence at twenty-five feet to a point seventy five feet distant from station 35 + 44, thence parallel with and seventy five feet distant from centreline to a point Seventy five feet distant from Station "Twenty three", Thence at twenty five feet to a point Fifty feet distant from Station "Twenty three", thence parallel with and a fifty feet distance from centreline to a point fifty feet distant from Station "0", thence at Fifty feet to Section "0" the place of beginning the herein described tract containing in the aggregate Fifteen 93/100 acres more or less.
and an additional 1.46 acres described as:
The following described tract of land for railroad purposes as Right-of-Way for Spur track from Bidstrup's Saw Mill to point on main line siding opposite Station 34 plus 10 of mainline, said tract or strip of land being situated on each side of located center line of above mentioned spur tract and being in width as follows: From Station One to Station 13, width Thirty feet; that is, Fifteen feet on each side of centre line, from Station Thirteen to Station 15 + 50 width Forty feet that is, Fifteen feet on left and Twenty five feet on right side of located center line from Station 15 + 50 to Station Seventeen width Thirty feet, that is, fifteen feet on each side of center line, from Station "Seventeen" a strip of Fifty feet; that is Twenty five feet on each side of center line to where said strip meets the body lines of right of way main line of M.L. & T.R.R.
and was deeded to Morgan's for consideration of a "right of way," depot, station house and spur track.
The central issue involved is the interpretation of the February 1891 compromise transaction instrument entered into by Bidstrup and Morgan's. The trial judge had to determine whether that document conveyed merely a "right of way," or whether it was a sale of the property in full ownership (fee title), or both. If only a servitude was conveyed, the Bidstrup heirs are entitled to the property. If a fee title passed, the judgment for the Brignac defendant must be affirmed.
We affirm the trial court judgment that the 1891 transaction between Bidstrup and Morgan's transferred an ownership interest (fee title) in 15.93 acres and a servitude or "right of way" grant to 1.46 acres.

*640 Property's Historical Background

On December 16, 1869, Elbert Gantt purchased from the Offut Brothers Estate a piece of property called Mt. Pleasant Plantation located between Bayou Carron and Bayou Courtableau in the town of Washington, St. Landry Parish. The strip of land involved in the present dispute was a part of this plantation property. Before the Gantt deed, on March 11, 1836, the Offut Brothers and Nicholas Miramond mortgaged the entire plantation property in favor of the Bank. The plantation property was subsequently bought by Gantt who assumed the 1836 mortgage and undertook the obligation of providing a stock note to the Bank which was identified with an Act of Mortgage of William and Nathaniel Offut dated March 5, 1836.
Following his purchase of the property, Gantt, on June 9, 1881, entered into an agreement with Morgan's transferring part of the plantation property, which agreement was entered into subject to the mortgage in favor of the Bank. In 1890, the Bank foreclosed upon the 1836 mortgage. As stated above, following the purchase by the Bank at a sheriff's sale, the property was sold to Bidstrup on November 19, 1890. On February 23, 1891, Bidstrup entered into an agreement with Morgan's, transferring the same portion of the plantation property which Gantt, in the 1881 instrument, had transferred to the company which was then subject to the mortgage in favor of the Bank. After the death of Bidstrup, his widow, Christina Hanson Bidstrup, sold the remainder of the plantation property, to J. Franklin Schell on January 2, 1913. That property was sold for $33,300.00. Thereafter, Christina Hanson Bidstrup, upon seizure of the property by the sheriff executing a writ of seizure, re-acquired the property on October 31, 1914. On November 18, 1914, Christina Hanson Bidstrup again conveyed the same property to the Schells. Mrs. Schell, upon the death of her husband and pursuant to a court order to sell, sold the property back to Christina Hanson Bidstrup on December 14, 1935. Christina Hanson Bidstrup again sold the same property back to the widow Schell on December 17, 1935.
Prior to the 1935 transactions, the Schells, on October 10, 1930, conveyed to Morgan's certain portions of the plantation. The act stated that the Schells were to receive the old lumber recovered by Morgan's from its highway bridge at Carriere Street in Washington, Louisiana as consideration for the sale of the property.
Thereafter, Erma Schell Edgerton, the only child of the Schells, acquired the plantation property on March 26, 1940, from the Estate of her mother, Jessie Schell. On April 12, 1949, Erma Schell Edgerton sold the property to Leonard and Nolen Soileau, father and son respectively.
Sue Soileau Brignac, defendant in the present case, eventually acquired the property from the estate of her father, Nolen Joseph Soileau, along with her mother and siblings on March 22, 1984. The property was next transferred to the Nolen J. Soileau Corporation by Nolen's widow and daughters on May 24, 1984. On December 8, 1986, the strip of land which was taken out of the plantation, in the deed from Bidstrup to Morgan's, was conveyed to the Nolen J. Soileau Corporation by the Southern Pacific Transportation Company (Southern Pacific), Morgan's successor, by quitclaim deed. This same property was, on that same day, quitclaimed by the Nolen J. Soileau Corporation to Sue Soileau Brignac.

Action of the Trial Court and Contentions of the Parties
The trial judge concluded that the transfer of property from Bidstrup to Morgan's in 1891, was a transfer in full ownership of the 15.93 acres and that the 1.46 acre area used for the spur track was a "right of way" grant. The Bidstrup heirs claim that the transfer of the 15.93 acres to Morgan's from Bidstrup, their ancestor in title, was merely a grant of a "right of way" servitude of passage to Morgan's and that they retained fee title to the property comprising the "right of way." They allege, therefor, that upon abandonment of the "right of way," full rights of ownership and possession of the property reverted to them as the legal heirs of Bidstrup. The defendant, on the other hand, claims that by the acts of sale from Gantt *641 and later from Bidstrup to Morgan's, Bidstrup disposed of his title to the "right of way" tract of land; and, that the eventual abandonment by Morgan's successor transportation company and act of sale by that company to the Soileau Corporation, now render the defendant the true and lawful owner of the fee title tract.

The 1891 Bidstrup-Morgan's Transaction
The relevant language of the 1891 Bidstrup deed at issue appears below:
"Personally came and appeared Herman Larson Bidstrup ... and Alexander C. Hutchinson President of the Morgans [sic] Louisiana and Texas Railroad and Steamship Company of New Orleans Louisiana
Which said appearers severally declared that Whereas in the year 1880 Gantt then the owner of the hereinafter mentioned property did grant unto said Morgans ... a right of way over his Plantation ... and which was acquired by ... Gantt from Offut Brothers on the 16 December 1869, and also fifteen acres of said plantation to be selected by said Company for station and depot purposes which right of way station and depot grounds since the date of said grant thereof by ... Gantt to said Company and up to the present date have been in the continual enjoyment and possession of said Company ..."
* * * * * *
"And whereas after said purchase said Bidstrup asserted a claim to the land occupied by said Company as a right of way and for station and depot purposes.
"And whereas by way of compromise said Company proposed to purchase from... Bidstrup the right of way and a part of the land for station and depot purposes as laid out and selected by ... Company in consideration of the sum of Sixteen hundred dollars Cash, to be paid to ... Bidstrup by ... Company and in consideration of the obligation to be taken by ... Company to construct a ... switch agreed upon between ... parties hereto for which purpose ... Bidstrup is to convey to ... Company the right of way on the land to be occupied by ... switch and to grant to... Company the right to construct ... switch and keep same for railroad purposes."

* * * * * *
"... Bidstrup declares that in accordance with ... compromise, and agreement... Company has paid to him in Cash the sum of Sixteen hundred dollars... and in consideration thereof he, does by these presents give grant, sell and release to ... Company its successors and assigns ... the said right of way depot and station grounds ... containing an aggregate Fifteen and 93/100 acres more or less."
* * * * * *
"To have and to hold, the same with all lawful warranties and with full subrogation and substitution to all his rights and actions in warranty unto said Company and its successors and assigns forever."
* * * * * *

"And as further consideration of the sale and transfer herein made to it ... Company hereby obligates itself within Three months ... of this act to construct on ... plantation a switch or spur track... and for said purpose ... Bidstrup does by these presents give grant and release to ... Company its successors and assigns the right of way for said switch or spur track which shall be kept permanently by ... Company for Railroad purposes... containing ... One 46/100 acres more or less ..." (Emphasis added).

LAW AND DISCUSSION
Courts are bound to give legal effect to all written contracts according to the true intent of the parties and this intent is to be determined by the words of the contract when they are clear, explicit and lead to no absurd consequences. La.Civ.Code arts. 2045 and 2046; City of Eunice v. Sunland Properties, 597 So.2d 1198 (La.App. 3d Cir. 1992). The meaning and intent of the parties to the deed, in such cases, must be sought within the four corners of the instrument and cannot be explained or contradicted by extrinsic evidence. City of Eunice, 597 So.2d at 1200; Robinette v. Myers, 510 So.2d 1332 (La.App. 3d Cir.1987). The cardinal rule to *642 be followed in construing deeds, uncertain because of ambiguity, is to ascertain the intention of the parties from the entire language of the deed. Williams v. Hawthorne, 601 So.2d 672 (La.App. 2d Cir.1992), citing, Bouligny v. Delatte, 550 So.2d 929 (La.App. 3d Cir.1989). An instrument granting a right of way may intend either to create a servitude of passage or transfer ownership of the land. Whether one or the other is meant in any particular instrument must be gathered from the instrument as a whole. Generally, however, right of way means only a servitude. City of Eunice, 597 So.2d at 1200. It is also the rule that reference to the land involved as "right of way" or "for railroad purposes" does not necessarily indicate that the intent was to convey a mere easement or servitude, and in connection with construing the instrument as a whole, extrinsic evidence may be considered. City of Eunice, supra. When doubt exists as to the true sense of the words or phrases, each provision must be explained by reference to other provisions, words or phrases used in the same contract. La.Civ.Code art. 2050. In John Bailey Contractor, Inc. v. State, through DOTD, 439 So.2d 1055 (La.1983), our supreme court sets forth the proposition that parties to a contract will not be imputed with using language that is meaningless or without effect.
The Bidstrup heirs' contention in their brief that the trial judge concluded that the deed from Bidstrup to Morgan's was ambiguous finds no support in the record. The trial judge's written findings of fact and reasons for judgment contain no such conclusion. The Bidstrup heirs base their conclusion on the fact that the trial judge rendered his decision based upon his interpretation of the Gantt deed of 1881, by Elbert Gantt to Morgan's.
The Bidstrup heirs reason that because the trial judge went outside of the contract between Bidstrup and Morgan's, he, therefore, used extrinsic evidence, and must have concluded that the Bidstrup deed was ambiguous. Thus, the reasoning continues, the factors announced in Meaux v. Southdown Lands, Inc., 361 So.2d 974 (La.App. 3d Cir.1978) and in Sohio Petroleum Co. v. Hebert, 146 So.2d 530 (La.App. 3d Cir.1962), writ refused, 149 So.2d 763 (1963), should be considered to determine the interest the parties intended to convey by use of extrinsic evidence. The seven criteria established by those cases in examining extrinsic evidence include: 1) the consideration recited in the deed; 2) whether a specific measurement is given to the "right of way;" 3) whether the party claiming the fee title had an actual need for such title; 4) to whom the property was assessed and who paid the taxes on the property; 5) whether the grant was made for a specific purpose; 6) whether the grant is made "in perpetuity" or "forever;" and, 7) how the parties to the conveyance, or their heirs and assigns, have treated the property.
We agree with the Bidstrup heirs' basic reasoning that if the Bidstrup/Morgan's deed is ambiguous, extrinsic evidence may be admissible to show the parties' intent. We also agree that if the deed is ambiguous, the trial judge and this court may examine the above seven Meaux/Sohio, factors by use of extrinsic evidence to show the interest Bidstrup intended to convey to Morgan's.
We disagree, however, that the trial judge found the deed to be ambiguous. The trial judge made no statement as to the deed's ambiguity. He specifically reached his conclusions based upon the language contained in the Gantt instrument and the Bidstrup/Morgan's instrument. Although the trial judge referred to extrinsic evidence, he held that evidence to be unimportant and insignificant in reaching his decision. Further, we disagree that the deed is ambiguous and that the intent cannot be derived from the four corners of those documents. Because the trial judge used the 1881 Gantt deed as an aid in interpreting the 1891 Bidstrup deed does not mean that extrinsic evidence was used. In Standard Oil Co. of New Jersey v. Evans, 50 So.2d 203 (La.1950), the supreme court held that a resolution on file in the notarial records of the parish duly authorizing an agent to act on behalf of the vendor and referenced in a deed conveying a mineral interest could not be regarded as "extrinsic evidence." The supreme court further held that the resolution must be considered along with the deed to determine what was conveyed *643 by the mineral deed just as if the resolution had been written into the deed.
The second circuit in Williams v. Hawthorne, 601 So.2d at 676, interpreted the parties' intent by examining the terms of various deeds, holding that the trial court was not manifestly erroneous in looking to the terms of the various deeds in establishing the boundary, rather than relying on extrinsic evidence. See also, City of Eunice, 597 So.2d at 1200, involving whether a deed conveyed a "right of way" or fee title to a certain strip of land where the instrument executed by Southern Pacific Transportation Company stated that Southern, "conveyed any interest they had in the same strip of land as the above mentioned donation to the City of Eunice." The donation occurred prior to the disputed conveyance in December of 1894. This court, finding that the language contained in both documents was not ambiguous, stated that it would not consider extrinsic evidence although we used both instruments to determine the effect of the language in the second instrument. The trial judge in this case did precisely the same thing in reaching his final judgment. He did not find the documents ambiguous nor did he resort to the use of extrinsic evidence. In doing so, he did not err.
The key inquiry is whether Bidstrup conveyed a servitude or fee title to the 15.93 acres and the 1.46 acres. As to the 15.93 acres, of great significance is whether Gantt conveyed to Morgan's the land in fee title back in 1881. It is important because the Gantt instrument is not only the basis for Bidstrup's grant to Morgan's in 1891 of this land but is referenced in that document as well.
The trial judge's written reasons for judgment correctly points out the significant language in the Gantt/Morgan's instrument of 1881. The document recites, first, that Gantt "does hereby grant, sell, convey and deliver to Morgan's ... a track [sic] of land ... about twenty acres long ...," then recites the property description in detail. Secondly, pertaining to the 15.93 acres, the instrument recites that in consideration of Morgan's building a railroad through Gantt's land from Opelousas, Louisiana in the direction of Alexandria, Louisiana, Gantt did "grant, sell and deliver to said Company fifteen acres of land on the same place and on said line for Station purposes." The consideration provision applied to the twenty acre tract of land as well. We find, as did the trial judge, that there is no mention of a "right of way" in the Gantt/Morgan's document.
Although this court is aware of jurisprudence which holds that if the words "right of way" are included in a grant, it usually connotes a grant of a servitude and not fee title, the supreme court has held that this language is not conclusive. Arkansas Improvement Co. v. Kansas City Southern Ry., 189 La. 921, 181 So. 445 (1938). The language in the Bidstrup/Morgan's deed, "... to be selected by said company for station and depot purposes, which right of way station and depot grounds ..." followed by a precise description of the entire territory meant to be conveyed to Morgan's and the parties' failure to differentiate between the "right of way" territory and that of the other lands in the description, clearly shows that the "right of way" language was used to describe which parts of the land were being conveyed to Morgan's as opposed to the type of interest in the land Bidstrup conveyed and Morgan's acquired.
Moreover, of significance is the contrast in treatment of the two tracts of land conveyed in the 1891 Bidstrup/Morgan's compromise transaction. As to the 15.93 acres more or less strip of land, the instrument stated that Morgan's was, "to have and to hold ... forever." As to the 1.46 acres more or less strip of land, not only is the stated consideration different, but the conveyance language states, "... Bidstrup does by these presents give grant and release ... the right of way for said switch or spur track which shall be kept permanently ... for railroad purposes..." In conveying the two strips of land, Bidstrup gave each different treatment within the same instrument. As to the 1.46 acre strip, the above quoted language clearly limits the use of the land "for railroad purposes," thereby supporting the trial judge's and this court's finding that this was a sale of a mere "right of way" servitude and not a transfer of fee title. As to the remainder of *644 the property in dispute, the above quoted language does not limit the use of the land to a specified purpose. Additionally, rather than using the term "permanently," Bidstrup clearly used the word "forever" in conveying the 15.93 acres. Because these strips of land were treated differently within the same instrument, clearly both Bidstrup and Morgan's intended to treat the conveyance of these tracts of land differently. Had Bidstrup intended to convey merely a servitude to the 15.93 acre strip of land, he could have used the same limiting language that is present in the conveyance of the 1.46 acre strip of land.
We cannot fail to notice that Bidstrup and Morgan's chose to treat the conveyance of the 15.93 acre and 1.46 acre strips of land not only separately within the same instrument but, in doing so, they chose to use different language. Thus, we will not impute Bidstrup's and Morgan's manner of transferring the land to be without meaning. John Bailey Contractor, Inc., 439 So.2d 1055. It seems to us that if Bidstrup had intended to transfer the fee title or merely a servitude to the entirety of the land, there would be no need for separate conveyance sections within the same instrument, nor would the language, transferring Bidstrup's interest in the land, need to be different. The language and the use of separate conveyance sections in the Bidstrup/Morgan's instrument clearly indicates the intention of both parties to transfer a "right of way," as to the 1.46 acre strip of land, and a conveyance in fee title as to the 15.93 acre strip of land.
For the above reasons, the judgment of the trial judge is affirmed. Costs of this appeal are to be borne by plaintiffs-appellants.
AFFIRMED.