661 So.2d 626 (1995)
STATE of Louisiana, DOTD
v.
UNKNOWN OWNERS, et al.
Nos. 27,150-CA, 27151-CA.
Court of Appeal of Louisiana, Second Circuit.
September 27, 1995.
Writ Denied December 15, 1995.
Jerry Finley, Sr., Office of General Counsel, DOTD, Baton Rouge, for Appellant.
*627 Myrt T. Hales, Jr., Singer & Booth by Samuel T. Singer, Winnsboro, for Appellees.
Before SEXTON, LINDSAY and HIGHTOWER, JJ.
HIGHTOWER, Judge.
In this expropriation proceeding, the State of Louisiana Department of Transportation and Development appeals a decision declaring the various heirs of J. Burton Archibald to be owners of a 3.609 acre strip of land in Richland Parish and awarding $19,625 for the taking. Concluding that appellees do not hold title to the disputed real estate, we reverse.

BACKGROUND
In May of 1983, pursuant to its powers under LSA-R.S. 48:441, et seq., the State of Louisiana Department of Transportation and Development ("DOTD") filed two petitions in the Fifth Judicial District Court of Richland Parish to expropriate an abandoned railroad bed for the planned expansion of Louisiana Highways 15 and 137. In one petition, Docket No. 25,082 (hereinafter referred to as 082), the state named Missouri Pacific Railroad Company ("MOPAC") as the only defendant and sought title to two tracts, designated as Parcels 11 and 13. A second petition, Docket No. 25,083 (hereinafter referred to as 083), instituted proceedings against MOPAC and "Unknown Owners" to acquire three other pieces of property, Parcels 10, 12, and 14.[1]
In reference to suit 082 and the parcels listed therein, the state and MOPAC later filed a joint petition indicating that the two parties had reached a settlement by which the railway would accept the sum earlier placed in the registry of the court, $7,342, as just and adequate compensation for the company's property rights in the expropriated land. On December 6, 1984, the district court signed a judgment implementing that agreement and allowing MOPAC to withdraw the deposited sum.
Meanwhile, in suit 083, the district court appointed a curator to represent, identify, and locate the "Unknown Owners," whose ancestors in title dated back to the late 1800's.[2] In designing a method for handling the anticipated legal contests, the court expected each owner, when found, to appear as a defendant and file an answer in the original suit (083). Thereafter, according to the plan, the record would be separated and redesignated as Docket Nos. 25,083A, 25,083B, etc., and the defendants therein would be required to prove their alleged ownership interest in each specified tract. After a hearing on the issue of ownership,[3] a judgment would be rendered and the then "known" property holders could elect to receive the money previously placed in the court registry or, instead, demand a trial on the issue of just compensation.
Made into a legal and procedural quagmire through years of litigation, the present action (assigned Docket No. 25,083R by the district court) derives from an answer filed in suit 083 by over 100 heirs of J. Burton Archibald ("the Archibalds"). That pleading, presented over seven years after the state's original petition, asserted ownership of a specified 3.609 acre tract of the abandoned railroad bed situated within the town of Archibald. (See attached surveyor's map.) Later, at an ownership hearing on December 10, 1990, the Archibalds introduced an abstract of title and the opinion of an abstractor to the effect that they possessed full title to the property in question.[4] Thereafter, on February 11, 1991, the district judge signed a judgment recognizing appellees as owners of the claimed real estate.
Prior to the subsequently scheduled compensation trial, it came to the district court's *628 attention that the 3.609 acre tract in question actually fell within Parcel 11, the subject of suit 082, rather than within Parcels 10, 12, and 14, the subjects of suit 083. Consequently, a concern developed as to the effect that the filing of the Archibalds' answer in suit 083, rather than in 082, would have on the judgment of ownership. Beyond that, the state understandably became troubled by the fact that, in accordance with the decree signed in December 1984, payment for the identical tract had already transpired under the belief that MOPAC had been the rightful owner. Upon agreement between all parties, however, the trial court subsequently consolidated the two cases (082 and 083R) in an effort to eliminate any complications arising from the fact that defendants technically filed their answer in a suit not involving their claimed acreage.[5]
In March 1993, DOTD filed various exceptions and a motion for summary judgment. Essentially, these pleadings challenged the Archibalds' ownership claims and the previous judgment rendered on that issue in 083R. After rejecting the state's contentions, the district judge submitted the compensation question to a jury. The ensuing May 5, 1993 judgment awarded defendants the sum of $19,625, as well as legal interest and attorney's fees. The state now appeals, while the Archibalds have answered to seek additional compensation.

DISCUSSION

Timely Appeal
Before considering DOTD's complaints, we must first address the Archibalds' contention that the February 11, 1991 decision, recognizing appellees as owners of the disputed tract, is a final judgment which the state did not timely appeal and cannot now impugn.
Appellees assert that a decree adjudicating contested ownership in an expropriation suit, when signed prior to the decision concerning compensation, is a final appealable judgment which may be challenged only through a motion for new trial or an appeal filed within the applicable time limits. See Dixie Elec. Membership Corp. v. Henderson, 292 So.2d 895 (La.App. 1st Cir.1974), writ refused, 295 So.2d 178 (La.1974); State, Dept. of Highways v. Kilchrist, 222 So.2d 635 (La.App. 3d Cir.1969). Even if we accept that proposition, however, such delays did not run in the matter before us.
In every contested case where a final judgment rendered is not signed the same day as trial and in the presence of the parties, the delay for taking an appeal cannot begin to run until proper notice of judgment is given. LSA-C.C.P. Arts. 1913, 1974, 2087, 2123. Proper notice, in such cases, consists of mailing notice of the signing of the judgment to the parties. Additionally, the clerk must file a certificate in the record showing when and to whom notice has been mailed. LSA-C.C.P. Art. 1913; State v. Lamb, 26,257 (La. App.2d Cir. 10/26/94), 645 So.2d 791.
In the case sub judice, our review of the entire record fails to disclose that proper notice of the signing of the ownership judgment has ever been given to the state. Moreover, the clerk of the district court has verified, upon inquiry, that no formal notice originated from that office. Similarly, despite appellees' contention that appellant obtained actual notice of the signing, such awareness reposes outside the record and does not cause the new trial and appeal delays to commence, absent compliance with the mailing or service requirement. See Haywood v. Salter, 421 So.2d 1190 (La. App.2d Cir.1982). Accordingly, the appeal delays did not begin to run prior to the granting of the present appeal of the ownership decision. See State v. Lamb, supra; Draper v. Draper, 554 So.2d 79 (La.App.2d Cir.1989); Haywood, supra; Hamiter v. Hamiter, 414 So.2d 1379 (La.App.2d Cir. *629 1982); Fruge v. City of New Orleans, 595 So.2d 1200 (La.App. 4th Cir.1992).

Ownership
On October 2, 1890, J. Burton Archibald along with J.J. Archibald filed for registry a document captioned "PLAT OF ARCHIBALD LOUISIANA," consisting of a map of the subdivision survey laying out the town and a declaration, signed by J. Burton Archibald, stating:
I hereby file accompanying Town Plat situated on my lands in S.W. ¼ Section 20 and W. ½ N.W. ¼ Section 29, T.16N. R.7E. in Richland Parish Louisiana and dedicate Streets and Alleys shown to public use and assign strip 200 feet wide marked Rail Road Reserve to the New Orleans & North Western Railway Company. [Emphasis added.][6]
The 3.609 acre tract claimed by appellees comprises the 200 foot wide strip of land assigned to the railroad by J. Burton Archibald and designated on the original town plat as "Rail Road Reserve."[7] On appeal, the state maintains that this document conveyed full ownership to the railroad company, and, thus, the Archibalds retained no interest in the disputed property despite the subsequent abandonment of railway operations in 1982. We find this position well taken.
Courts are bound to give legal effect to all written contracts according to the true intent of the parties, and that intent is to be ascertained by the words of the contract when clear, explicit, and leading to no absurd consequences. LSA-C.C. Arts. 2045, 2046; Aldredge v. Whitney, 591 So.2d 1201 (La.App.2d Cir.1991); Bidstrup v. Brignac, 93-537 (La.App. 3d Cir. 02/02/94), 631 So.2d 637. Hence, whether a mere servitude or perfect ownership (fee title) is meant to be conveyed must be determined within the four corners of the instrument. Sun Oil Co. v. Stout, 46 So.2d 151 (La.App.2d Cir.1950); Meaux v. Southdown Lands, Inc., 361 So.2d 974 (La.App. 3d Cir.1978). Only where the agreement is unclear, ambiguous, or will lead to absurd consequences, should a court go beyond the written agreement to gather the parties' true intentions. Porter v. Acadia-Vermilion Irrigation Co., Inc., 479 So.2d 1003 (La.App. 3d Cir.1985), writ denied, 483 So.2d 1019 (La.1986).
Upon review of the above mentioned document, we conclude that J. Burton Archibald conveyed complete ownership of the 200 foot strip rather than merely a servitude.[8] First of all, the use of the word "assign" gives the writing the earmarks of an outright conveyance of the land.[9] See Arkansas Improvement Co. v. Kansas City So. Ry. Co., 189 La. 921, 181 So. 445 (1938); cf. Rock Island, A. & L.R. Co. v. Gournay, 205 La. 125, 17 So.2d 8 (1943); Meaux, supra; Noel Estate v. Kansas City Southern & Gulf Ry. Co., 187 La. 717, 175 So. 468 (1937). Second, unlike instruments considered in several similar cases within the jurisprudence, the present document never describes the railroad parcel as a "right-of-way" or servitude. Instead, the language utilized here forthrightly transfers the designated land to the railway company without any exception, reservation, or other qualifying or limiting language. Cf., e.g., Nelson v. Texas & P. Ry. Co., 152 La. 117, 92 So. 754 (1922); Ham v. Strenzke Realty Co., 218 La. 499, 50 So.2d 11 (1950). See also Rock Island, A. & L.R. Co., supra (deeming use limitations inconsistent with a grant of fee simple title). Unquestionably too, the expected advantages from the operation of the railroad through the newly created town constituted ample consideration for *630 such a conveyance. See Simoneaux v. Lebermuth & Israel Planting Co., 155 La. 689, 99 So. 531 (1924).
Appellees argue that, because the streets-and-alleys dedication appears in the same sentence as the assignment to the railroad company, the owner intended to convey only a servitude. We disagree. Even assuming that a pre-1896 dedication of streets and alleys to public use bestowed only a servitude,[10] we find the use of "dedicate" on the one hand, as opposed to "assign" on the other, to be significant. Said differently, by contrasting the owner's treatment of streets and alleys with his language concerning the 200 foot strip, an intention emerges to transfer different types of interests in these properties. Cf. Askew v. Vicksburg, S. & P. Ry. Co., 171 La. 947, 132 So. 510 (1931); Bidstrup, supra. Thus, as previously explained, the Archibald heirs did not own the 3.609 acre tract claimed in their answer to the state's expropriation suit. Accordingly, the district court erred in its adjudication in favor of appellees.

CONCLUSION
For these reasons, we reverse the district court's judgment declaring the J. Burton Archibald Heirs to be owners of that certain 3.609 acre tract of land contained within Parcel No. 11, as designated in Richland Parish District Court Suit No. 25,082, and claimed by appellees in their answer to Richland Parish District Court Suit No. 25,083. Additionally, the award of just compensation in their favor is vacated. Costs are to be borne by appellees.
REVERSED.
*631 
NOTES
[1] The state's petitions describe each parcel as lying a designated number of feet on each side of the centerline of the abandoned track and extending between certain survey "stations" along the railroad bed.
[2] The trial judge characterized the effort to locate these unidentified owners as a "monumental task for all concerned."
[3] Apparently, as matters developed, the state rarely participated in the ownership stage of these proceedings.
[4] Although notified, the state did not attend this hearing. Even so, the contradictory matter proceeded with the attorney appointed to represent the "Unknown Owners" appearing.
[5] On appeal, the state contends that it did not agree to the consolidation and that the trial court erred in granting such an order. At a hearing on December 9, 1992, however, the state's attorney, John King, joined in defendants' motion and stated, "I have no objection to that consolidation, Your Honor." Furthermore, although not critical to our resolution of the case, we find no error in the joining of the two matters due to the unique manner in which DOTD chose to proceed against the "Unknown Owners." Cf. State, Dept. of Trans. and Dev. v. Willard E. Robertson Corp., 563 So.2d 1165 (La.App. 4th Cir.1990), writ denied, 569 So.2d 965 (La.1990).
[6] J.J. Archibald signed a similar statement in reference to the property he owned that made up the remaining portion of the newly created village.
[7] MOPAC eventually acquired its interest in the strip through a series of conveyances traceable to the original assignee, New Orleans & North Western Railway Company.
[8] Concerning the expropriated railway route which extended through three parishes, the trial court observed that in some cases MOPAC's predecessors in title acquired full ownership of the railroad bed, while in certain other instances obtaining only rights-of-way.
[9] An assignment denotes the transfer or making over to another of the whole of any property, real or personal, in possession or in action, or of any estate or right therein. Black's Law Dictionary 119 (6th ed. 1990).
[10] Several cases indicate that plats containing formal dedications convey full ownership to the public, if filed prior to the enactment of Act 134 of 1896 (LSA-R.S. 33:5051) controlling statutory dedications. See Parish of Jefferson v. Doody, 247 La. 839, 174 So.2d 798 (1965); Richard v. City of New Orleans, 195 La. 898, 197 So. 594 (1940); Herlitz v. City of Baton Rouge, 298 So.2d 140 (La.App. 1st Cir.1974), writ denied, 302 So.2d 16 (La.1974); Ross v. City of Covington, 271 So.2d 618 (La.App. 1st Cir.1972), writ denied, 273 So.2d 844 (La.1973); Banta v. Federal Land Bank of New Orleans, 200 So.2d 107 (La. App. 1st Cir.1967), writ denied, 251 La. 46, 202 So.2d 657 (1967).